[No. 7,877.—Department One.]
May 26, 1882.

## CHARLES ALPERS ET AL. v. BENJAMIN W. BROWN ET AL.

ORDINANCE—CONSTRUCTION OF CONTRACT—REMOVAL OF DEAD ANIMALS.—An ordinance of the City of San Francisco provided that, whenever any horse or other animal should die within the limits of the city and county, the owner thereof or the person, in whose possession the same might be at the time of its death, should dispose of its carcass in such a manner that the same should not become a nuisance or should notify W. or his associates or assigns within twenty-four hours where such carcass might be found, etc.; and also provided that no person other than the said W. or his associates or assigns or the person owning or having possession of any animal at the time of its death should remove or dispose of the carcass of such animal unless the said W. and his associates and assigns should fail to remove the same within twenty-four hours after receiving notice thereof.

*Held* : By the provisions of this ordinance the owner or the person, in whose possession the animal should be when death occurred, was given the right to dispose of the carcass in such a manner as not to become a nuisance at any time within twenty-four hours after death, and it was competent for him to exercise that right in any way he should see fit by contract or otherwise.

APPEAL from a judgment for the plaintiff in the Superior Court of the City and County of San Francisco. WILSON, J.

The complaint alleged the execution of the contract hereinafter set forth between Wetzlar and the city and the passage of the ordinance referred to in the opinion; and further alleged that the defendants under the name and style of "The San Francisco Company for the Removal of Dead Animals, in open and direct violation of plaintiffs' rights under said contract, unlawfully set up and established order boxes for their own use and benefit, for the reception of orders for the removal of dead animals, similar to those set up and established by plaintiffs for their use and like purpose, in the same localities, at which localities defendants stationed and maintained men and teams for the receipt of orders and removal of dead animals, and have ever since, by themselves and their employés, continued to take, receive and intercept said orders, and to remove said dead animals, and still continue so to do, to plaintiffs' great wrong and damage, to wit: damage in the sum of two thousand dollars, gold coin; and that defendants gave out and threatened that they will persist and continue in the commission of their wrongful acts, aforesaid, and plaintiffs have good and sufficient reason to believe, and do believe, that defendants will so persist and continue, unless restrained therefrom by the order and injunction of this Court.

The contract was as follows:

"This agreement, made and entered into this twenty-ninth day of May, A. D. 1866, between the City and County of San Francisco, of the first part, and Gustavus Wetzlar, of the second part.

"Witnesseth, that the said party of the second part, for the consideration of one dollar to him in hand paid, the receipt of which is hereby acknowledged, and of the covenants on the part of the party of the first part to be kept and performed, hereby covenants, promises and agrees, that he will, at his own cost and expense for the period of twenty (20) years from the date hereof, remove and take away all dead carcasses of horses and cattle in the City of San Francisco, to some place where the carcasses shall be disposed of in such a manner as not at any time to become a nuisance.

" The mode and manner of their disposition to be at all times subject to the sanitary regulations and control of the Board of Supervisors of the City and County of San Francisco, and such removal to be made, in every instance, immediately upon receiving notice of the existence of any such dead carcass.

" And the said party of the first part, in consideration of the removal aforesaid, hereby covenants and agrees, that said party of the second part shall have the exclusive privilege of taking away and removing, as aforesaid, all such dead carcasses of horses and cattle in the City of San Francisco for the period of twenty years from the date hereof.

" Such exclusive privilege to be secured to said party of the second part by proper ordinance, requiring notice to be given to said party of the second part in every case of death of horses and cattle. And it is agreed that said Wetzlar shall, during said period of twenty years, keep an office or place of business in some central location, where notice may be given of the existence of any such dead carcass."

The answer alleged that heretofore and prior to the commencement of this action, the defendants made and entered into agreements with divers and sundry street railroad companies, livery stable keepers and other persons, whereby it was covenanted and agreed by and between the defendants and the corporations and persons with whom such contracts were made, that such corporations or persons should deliver to them, said defendants, for a period of one year, the dead carcass, or carcasses, of any and all animals belonging to such corporations or persons, dying within said city and county during such period, and defendants, in consideration thereof, should remove said carcass or carcasses without cost or expense to such owner or owners, and dispose of the same so as not to create a nuisance in said city and county, or elsewhere, and that in pursuance of said contracts these defendants have provided teams for the removal of any and all carcasses which may be so received by them under said contracts, and have provided works, buildings, and machinery necessary for the disposition thereof, so as not at any time to create a nuisance in said city and county, and in and about the premises have

expended a large sum of money, to wit: fifteen hundred dollars, or thereabouts.

The Court in effect found these allegations of the complaint and answer to be true; and further found that in no case have they removed carcasses of dead animals belonging to others than those with whom they had contracts as aforesaid.

That such carcasses were uniformly removed from the private premises of said corporations or persons with whom the defendants had contracts as aforesaid, with one exception, namely, that one dead horse was removed by them from Sutter street in said city and county, which dead horse belonged to the Sutter street Railroad Company, with which corporation the defendants had a contract as aforesaid; that the dead carcasses of dead horses and cattle are worth from five dollars to ten dollars each.

*F. G. Newlands,* for Appellants.

Plaintiff's special privilege is, in the extent and scope claimed, a monopoly. This privilege, if conceded to be as extensive in its application as claimed in the Court below, deprives the owners of their property in dead animals, without due process of law, and imposes a burden without a corresponding benefit. It is in restraint of trade; it is unreasonable and oppressive. The contract, and ordinances passed in aid of it, are, therefore, void. (Dillon on Munic. Corpor. §§ 55, 253-255, 257-259, 262; *Commissioners* v. *Gas Co.,* 12 Penn. St. 323; *Norwich Gas Co.* v. *Norwich City Gas Co.,* 25 Conn. 19; *Mayor* v. *Thorne,* 7 Paige, 263.)

The contract and ordinances referred to must be limited in their application to animals actually requiring removal—that is, animals in such a condition of putrefaction as to constitute a nuisance. They were not intended to take away from the owner the possession and the control of his property, or the power to dispose of it as he saw fit. The owner could remove it, or he could direct his servant to do so, or he could employ the defendants to do so. The act of the agent is the act of the principal. More than this, by the very terms of their contracts, the defendants became the owners of the carcasses immediately upon their death, and under the ordinances the owners had the right to remove such carcasses.

Even the strictest construction of Order No. 838 would only hold that the rights of plaintiffs attach at the expiration of twenty-four hours after the death of an animal. During this time the owner or his agent could remove—and it nowhere appears that the defendants did remove after the expiration of the twenty-four hours. For the construction of similar ordinances, see *Underwood* v. *Green*, 42 N. Y. 140.

*James Mee*, also for Appellant.

The contract is in direct violation of Article i, Section 8, of our then existing State Constitution (as borrowed from a leading provision of Magna Charta,) which declares that life, liberty and property shall not be taken from the citizen without due process of law. We find the contract and the ordinance at war with each other, the contract giving to G. Wetzlar alone the exclusive right to remove all dead animals in said city, and the ordinance permitting the owner or party in possession to remove the same. And the legislature ratified both. (Statute 1873–4, 886.)

The plaintiffs, no doubt, will contend in this Court, as I understand they did in the lower one, "that if the ordinance prevail instead of the contract, then, and in that event, that said ordinance must be strictly construed in this, that the owners or party in possession of such dead animals shall remove the same in person, not by agent or servant." Such a rule of construction would be to handicap the weak against the strong.

*George Turner, Severance & Naphtaly*, for Respondents.

As a sanitary measure, it is competent and legal for the city to provide, by ordinances and contract, for the removal of dead animals which may be found within the city limits. That they did make such contract with Gustave Wetzlar, and the contract was fully legalized by the legislature of this State, and this is the act of the sovereign power in the premises. It is plain, therefore, that all animals that die in said city "and require to be removed," "or may become nuisances," are to be removed first by owner or possessor, or next by Wetzlar or his assigns, and if Wetzlar or his assigns do not remove within twenty-four hours, any one can. It is a fair

and proper sanitary regulation and applies to all carcasses, whether on public or private grounds.

*J. B. Crockett,* also for Respondents.

It is claimed that, under Ordinance 838, the owner of the dead animal had the right, within twenty-four hours after its death, to so dispose of the carcass as to prevent it from becoming a nuisance; and it is said that, within the twenty-four hours the owner could either remove the carcass himself or authorize another to do it, and that there is no finding to the effect that any of the carcasses removed by the defendants under their contract, had become nuisances or were not removed within the twenty-four hours allowed the owner for that purpose. But the contract between the defendants and the owners of dead animals, as found by the Court, does not provide for the removal of the carcass, within twenty-four hours after death, or within any other definite period. Nor does it appear that any of the carcasses removed by the defendants were, in fact, removed within the twenty-four hours, or before they had become nuisances. If they relied upon this as a defense, it was incumbent on them to prove it as an affirmative fact; and to enable them to prove it, they should have averred it in the answer; but there is no such allegation. They seek to avail themselves of a special privilege reserved to the owner to remove the carcass within twenty-four hours after death, but have wholly failed to bring themselves within the terms of the privilege by averment or proof.

Ross, J. :

The plaintiffs claim the exclusive right to remove dead animals from the city and county of San Francisco, by virtue of a contract entered into between the city and county and one Wetzlar in the year 1866. The ordinance on which the asserted right is founded declares, in its first section, that " whenever any horse, ass, swine, sheep or goat, or cattle of any kind shall die within the limits of the city and county of San Francisco, the owner thereof, or the person in whose possession the same may be at the time of its death shall dispose of the carcass in such a manner that the same shall not become a nuisance, or shall notify G. Wetzlar, or his associates or as-

signs, within twenty-four hours, where such carcass may be found," etc.: and a failure in this respect is declared to be a misdemeanor and punishable accordingly.

The second section declares, that "no person other than said G. Wetzlar, or his associates or assigns, or the person owning or having possession of any animal mentioned in the preceding section, at the time of its death, shall remove or dispose of the carcass of such animal, unless the said Wetzlar, his associates and assigns, shall fail to remove the same within twenty-four hours after receiving notice thereof, as herein before provided. And no person shall obstruct, hinder or in any manner interfere with the said Wetzlar, or his associates or assigns, in the removal or disposition of any such carcass." A violation of this section is also declared to be a misdemeanor and punishable.

By the provisions of this ordinance the owner, or the person in whose possession the animals should be when death occurred, was given the right to dispose of the carcass in such a manner as not to become a nuisance, at any time within twenty-four hours after death; and Wetzlar's right to remove them did not attach until the expiration of the said period of twenty-four hours or until he should receive notice of the death and where the carcass could be found, from the owner or the person in possession. In the present case neither the findings nor the complaint show that the defendants have ever removed any dead animal from the City and County of San Francisco at any time when the plaintiffs had that right, or that the defendants threatened to do so. The findings do show that defendants have contracted for the period of one year with certain street railroad companies, livery stable keepers, and other persons, for the removal of such animals belonging to such companies and persons as should die within the City and County of San Francisco, and for the disposition of the same in such manner as not to create a nuisance in the city and county or elsewhere.

But since by the ordinance the owner was given the right, up to the expiration of twenty-four hours after death, to dispose of the carcass in such a manner that the same should not become a nuisance, it was competent for him to exercise that right in any way he should see fit—by contract or other-

wise. And since by the terms of the ordinance the rights of the plaintiffs as assignees of Wetzlar do not arise until the expiration of twenty-four hours after the death of the animals, or until the receipt of notice as aforesaid, it was incumbent upon them to show, in order to maintain the action, an interference with those rights on the part of the defendants. The fact that the latter removed certain dead animals of the character mentioned in the ordinance, from the city and county, in such a way as to prevent the creation of nuisance, under a contract with the owners, does not show such interference. *Non constat* but that they were so removed within the twenty-four hours allowed the owners by the ordinance for that purpose. It could hardly have been contemplated by the Board of Supervisors that the owners of such animals as should die should exercise the privilege granted of removing them within the time stated *with their own hands.* At all events, there can be no doubt of their right to exercise that privilege through others.

Judgment reversed and cause remanded.

McKINSTRY and McKEE, JJ. concurred.