HERMAN BOEHM, and CHARLES E. LOEBER, trading as JOHN G. VOGT & CO. *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Ordinances No. 75 and 76, of Baltimore City Code, of 1879— Powers and Liabilities of Municipal Corporations in Matters of Health—City Comptroller—Health Commissioner—Revocation of License—Pleadings—Demurrer.*

Under the power to preserve the health and safety of the inhabitants, a municipal corporation has the undoubted right to pass ordinances creating Boards of Health, appointing Health Commissioners with other subordinate officials, regulating the removal of house dirt, night soil, refuse, offal, and filth, by persons licensed to perform such work, and providing for the prohibition, abatement, and suppression of whatever is intrinsically and inevitably a nuisance.

Boehm & Loeber *vs.* Mayor, &c., of Baltimore.

Under the power "to pass ordinances to preserve the health of the city, to prevent and remove nuisances, and to prevent the introduction of contagious diseases," the Mayor and City Council of Baltimore enacted, among others, Ordinances Nos. 75 and 76, relating to "Privies," (City Code of 1879, page 407.) By the first of these it is provided that no person shall remove the contents of any privy, well or sink within the limits of the city without having first obtained a *license* so to do. And every person who may obtain such license "shall be considered as subject to the orders of the Board of Health in all matters relating to the opening and cleaning of privies or vaults, time and manner of removal, and the presentation of statistics connected with the cleaning of privies, as also the place or places to which night soil may be removed; and for any refusal or neglect to obey the orders of the Board of Health as herein provided, it shall be the duty of the Comptroller "*upon the written request of the Commissioner of Health*, to *revoke* the license of the person or persons so refusing or neglecting to obey." By the second it is enacted that every person desiring such license shall make a written application therefor to the Comptroller, who, after conference with the Board of Health, and on being satisfied on the points of inquiry indicated in the ordinance, may grant him a license for one year, and renew the same from time to time upon payment of the license imposed by the ordinance. And every person so licensed is required to give bond conditioned for the faithful performance of all the duties enjoined by the ordinance, "and the Comptroller, *upon complaint* of the Health Commissioner, may *revoke* or *suspend* any such license." In an action against the city brought by parties who had been licensed under these ordinances, for the suspension and revocation of their license, the defendant in addition to the plea of *non cul.* upon which issue was joined, pleaded specially that the license was revoked by the Comptroller upon the *complaint* and *written request* of the Health Commissioner as in said ordinances was provided. On demurrer to this plea it was HELD:

1st. That these ordinances were a lawful and proper exercise of the power "to preserve the health of the city, and to prevent and remove nuisances."

2nd. That the mischief against which they were directed, and the object sought to be obtained by their enactment, were altogether different from those with which the ordinance pronounced void in *Radecke's Case*, 49 *Md.*, 217, professed to deal, and they were not only free from the objections which were held fatal to that ordinance, but were in every respect reasonable and proper.

3rd. That the Comptroller, before acting, was not required to investigate and determine the reasonableness or truthfulness of the charges or complaints made by the Health Commissioner.

4th. That the plea having averred that the license was revoked upon both the complaint and the written request of the Health Commissioner, it was a bar to the action against the city.

5th. That if the Commissioner made the request or complaint maliciously or without just grounds therefor, and the plaintiffs were damnified thereby, the corporation could not be made responsible for such misconduct on his part.

6th. That as the declaration contained but a *single* count, and the special plea, which was confessed by the demurrer, was a complete bar to the whole action, the Court below was right in entering final judgment for the defendant after the demurrer to the special plea was overruled, notwithstanding the issue joined on the plea of *non cul.* was still pending.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, and BRYAN, J.

*Richard Hamilton,* for the appellants.

*John Prentiss Poe, City Counsellor,* for the appellee.

MILLER, J., delivered the opinion of the Court.

Under the power "to pass Ordinances to preserve the health of the City, to prevent and remove nuisances, and to prevent the introduction of contagious diseases," the Mayor and City Council of Baltimore, enacted, among others, two Ordinances, Nos. 75 and 76, relating to "Privies." City Code of 1879, page 407. By the first of these Ordinances it is provided that no person shall remove the contents of any privy, well, or sink, within the limits of

the city, without having first obtained a *license* so to do, and every person who may obtain such license "shall be considered as subject to the orders of the Board of Health in all matters relating to the opening and cleaning of privies or vaults, time and manner of removal, and the presentation of statistics connected with the cleaning of privies, as also the place or places to which night soil may be removed, and for any refusal or neglect to obey the orders of the Board of Health as herein provided, it shall be the duty of the Comptroller, *upon the written request of the Commissioner of Health,* to *revoke* the license of the person or persons so refusing or neglecting to obey." By the second it is enacted, that every person desiring such license shall make a written application therefor, to the Comptroller, who, after conference with the Board of Health, and on being satisfied with the character of the applicant, the security and tightness of his carts, that he is the owner of such as are specified in his application, and that he is not in collusion or combination with others to defraud the city, may grant him a license for one year, and renew the same from time to time, upon his paying for such license, and each renewal of the same, the sum of $2.50 for each and every cart; and every person so licensed shall give bond to the city in the penalty of $500, conditioned for the faithful performance of all the duties enjoined by this ordinance, "and the Comptroller *upon complaint* of the Health Commissioner may *revoke* or *suspend* any such license."

· The suit in the present case was brought against the Mayor and City Council of Baltimore, by the appellants, who allege in their declaration that they were engaged in removing night soil from sinks attached to dwelling houses in the city, under a regular license issued by the defendant; that they had invested a large capital in this business and were accustomed to earn large profits therefrom, and that the defendant without just or legal cause

suspended and revoked their license, whereby they have been prevented from carrying on their said business, and in consequence thereof have suffered great loss and damage. The defendant pleaded *non cul.* upon which issue was joined ; and then, by leave of Court, filed an additional plea in which they set out the ordinances above stated, and aver that the license obtained by the plaintiffs from the defendant was issued under, and in pursuance of, and subject to, the provisions of said ordinances, and that said license was revoked by the Comptroller upon the *complaint* and *written request* of the Health Commissioner as is therein provided.   To this additional plea the plaintiffs demurred, but the Court overruled the demurrer and gave judgment for the defendant with costs.   From this judgment the plaintiffs have appealed.

The validity of these ordinances was not seriously questioned in argument.   That they are a lawful and proper exercise of the power " to preserve the health of the city and to prevent and remove nuisances," does not admit of doubt.   Such powers have been universally granted to municipal corporations in this country.   In fact the preservation of the health and safety of the inhabitants is one of the chief purposes of local government, and reasonable by-laws, in relation thereto have always been sustained in England, as within the incidental authority of such corporations.   Under such a power a municipal corporation has the undoubted right to pass ordinances creating Boards of Health, appointing Health Commissioners, with other subordinate officials, regulating the removal of house dirt, night soil, refuse, offal, and filth, by persons licensed to perform such work, and providing for the prohibition, abatement and suppression of whatever is intrinsically and inevitably a nuisance. 1 *Dillon on Mun. Corp.*, (*3rd Ed.*) *secs.* 369, 379.   There is no similarity between these ordinances, and the one pronounced inoperative and void in *Radecke's Case*, 49 *Md.*, 217.   The mischief against which

they are directed, and the object sought to be attained by their enactment, are altogether different from those with which the ordinance in that case professed to deal, and we have no hesitation in declaring them not only free from the objections which were held fatal to that ordinance, but in every respect reasonable and proper.

The subject-matter dealt with by these ordinances required the adoption of very stringent rules and regulations, and such is the character of their provisions. Every person obtaining a license to perform this offensive, but necessary work, is very properly subjected to the orders of the Board of Health in all matters pertaining to the manner of doing it. By one of the ordinances it is provided that "for any refusal or neglect to obey the orders of the Board of Health, as herein provided, it *shall be the duty* of the Comptroller, upon the written request of the Commissioner of Health, to *revoke* the license," and by the other, *power* is given him to revoke or *suspend* the license upon the complaint of the same officer. We do not interpret these provisions as requiring the Comptroller, before he acts, to investigate and determine the reasonableness or truthfulness of the charges or complaints made by the Health Commissioner. Prompt and decisive action is what is contemplated and required, for it is manifest that such work could not be done, even for a short time, in an improper manner without serious danger to the public health. In the one case it is made his *duty* to act immediately "upon the written request," and in the other he *may* act upon the simple complaint of the Health Commissioner. The plea avers there was in this case both the "complaint and written request," and we are of opinion it is a bar to this action against the city. If the Commissioner made the request or complaint maliciously, or without just grounds therefor, and the plaintiffs have been damnified thereby, the corporation cannot be made responsible for such misconduct on his part. The power

to pass Health ordinances like these is derived from what is known as the *police power* of the State, and it was delegated to be exercised not for the benefit, or in the interest of the city in its corporate capacity, but for the public good. Commissioners and other officials acting under such ordinances and enforcing such regulations, perform duties and occupy positions similar, in legal effect, to that of police officers, and it is well settled that such officers appointed by a city, are not its agents or servants, so as to render it responsible for their unlawful or negligent acts in the discharge of their duties. Accordingly it has been held that a city is not liable for an assault and battery committed by its police officers, though done in an attempt to enforce an ordinance of the city, nor for an arrest made by them which is illegal for want of a warrant. 2 *Dillon on Mun. Corp.,* sec. 975.

It is said, however, there must be a reversal, because it was error to enter final judgment for the defendant, after demurrer to the special plea was overruled, while the issue joined on the plea of *non cul.* was still pending. This argument is based upon the action of this Court in *Walter vs. County Commissioners of Wicomico County,* 35 *Md.,* 395. But in that case the demurrer affected only one count of the declaration, while there were pending issues upon pleas filed to other counts, and *non constat* the plaintiff was not entitled to recover under these counts. But in this case the declaration contains but a *single* count, and the special plea, which was confessed by the demurrer, is a complete bar to the whole action.

*Judgment affirmed.*

(Decided 7th February, 1884.)