GEORGE D. SMILEY, APPELLEE, V. ALEXANDER MAC-DONALD, APPELLANT.

FILED OCTOBER 2, 1894.    No. 6957.

1. **Constitutional Law:** SPECIAL LAWS: MUNICIPAL CORPORATIONS: EXCLUSIVE FRANCHISES. Section 15, article 3, of the constitution, which provides that "the legislature shall not pass local or special laws * * * granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever," *held*, not a restriction upon the power of the legislature over the subject involved, but rather as a limitation with respect to the manner of the exercise of such power.

2. ——: METROPOLITAN CITIES: CONTRACT TO REMOVE GARBAGE. The constitutional provision above cited does not pro-

hibit cities of the metropolitan class from contracting for the removal therefrom of dead animals, garbage, and other noxious and unwholesome matter.

3. ———: ———: REMOVAL OF GARBAGE: EXCLUSIVE CONTRACT. Nor will such a contract be held void by reason of a stipulation therein that the privilege thereby conferred upon the contractor is exclusive.

4. ———: POLICE POWERS. The legislature cannot, under the guise of police regulation, arbitrarily invade private property or personal rights. The test when such regulations are called in question is whether they have some relation to the public health or public welfare, and whether such is, in fact, the end sought to be attained.

APPEAL from the district court of Douglas county. Heard below before FERGUSON, J.

A statement of the case appears in the opinion.

*Saunders, Macfarland & Dickey,* for appellant:

It is not the province of the courts to decide that any particular act passed by the legislature in the exercise of its police power, and, as a health law, is unconstitutional, unless it plainly appears to be so on the face of the act. (*In re New York E. R. Co.,* 70 N. Y., 351; *People v. Albertson,* 55 N. Y., 50; *People v. Draper,* 15 N. Y., 532; *In re Townsend,* 39 N. Y., 171; *People v. Smith,* 21 N. Y., 595; *Lindenmuller v. People,* 33 Barb. [N. Y.], 548; *Neuendorff v. Duryea,* 69 N. Y., 557; *Stuyvesant v. Mayor of New York,* 7 Cow. [N. Y.], 585; *Martin v. Mott,* 12 Wheat. [U. S.], 19.)

A municipal corporation has the right and power to grant, if it deems best, the exclusive duty of removing the garbage to one person or to one corporation. (*Walker v. Jameson,* 37 N. E. Rep. [Ind.], 402; *Slaughter House Cases,* 16 Wall. [U. S.], 36; *Commonwealth v. Alger,* 7 Cush. [Mass.], 84; *Thorpe v. Rutland & B. R. Co.,* 27 Vt., 149; *Gibbons v. Ogden,* 9 Wheat. [U. S.], 203; *City of*

*New York v. Miln,* 11 Pet. [U. S.], 102; *Le Claire v. City of Davenport,* 13 Ia., 210; Tiedeman, Limitations of Police Power, p. 316; *River Rendering Co. v. Behr,* 7 Mo. App., 345; Beach, Public Corporations, sec. 995; 15 Am. & Eng. Ency. Law, sec. 8, p. 1173; *Town of Summerville v. Pressley,* 11 S. E. Rep. [S. Car.], 545; *City Council of Charleston v. Baptist Church,* 4 Strob. [S. Car.], 306; *Copes v. City of Charleston,* 10 Rich. [S. Car.], 502; *Zylstra v. City of Charleston,* 1 Bay [S. Car.], 382; *Harrison v. City of Baltimore,* 1 Gill [Md.], 264; *Boehm v. City of Baltimore,* 61 Md., 259; *State v. Mott,* 61 Md., 297; *Huesing v. City of Rock Island,* 128 Ill., 465; *State v. Lowery,* 49 N. J. Law, 391; *Weil v. Ricord,* 24 N. J. Eq., 169; *Gregory v. Mayor of New York,* 40 N. Y., 273; *Cronin v. People,* 82 N. Y., 318; *People v. Mulholland,* 82 N. Y., 324; *Metropolitan Board of Health v. Heister,* 37 N. Y., 661; *Johnson v. Simonton,* 43 Cal., 242; *In re Linehan,* 72 Cal., 114; *Ex parte Shrader,* 33 Cal., 279; *Bliss v. Kraus,* 16 O. St., 54; *State v. Cowan,* 29 Mo., 330; *Mayor of the City of Monroe v. Gerspach,* 33 La. Ann., 1011; *Kennedy v. Phelps,* 10 La. Ann., 227; *Wreford v. People,* 14 Mich., 41; *Dubois v. City of Augusta,* 1 Dudley [Ga.], 30; *City of St. Louis v. McCoy,* 18 Mo., 238; *Metcalf v. City of St. Louis,* 11 Mo., 103; *Train v. Boston Disinfecting Co.,* 144 Mass., 523; *Ex parte O'Donovan,* 24 Fla., 281; *Polinsky v. People,* 73 N. Y., 65; *Health Department of New York v. Knoll,* 70 N. Y., 530; *Vandine, Petitioner,* 6 Pick. [Mass.], 187; *People v. Gordon,* 45 N. W. Rep. [Mich.], 658; *City of Newport v. Newport Light Co.,* 8 Ky. Law Rep. [Ky.], 22; *Des Moines Street R. Co. v. City of Des Moines,* 73 Ia., 513; *Kilvington v. City of Superior,* 83 Wis., 222; *City of Anderson v. O'Conner,* 98 Ind., 168; *Boon v. City of Utica,* 2 Barb. [N. Y.], 104.)

*Breckenridge & Breckenridge, contra,* contending that the contract is an exclusive franchise and invalid, cited: Dil-

lon, Municipal Corporations [4th ed.], secs. 89, 362; *Saginaw Gas Light Co. v. Saginaw,* 28 Fed. Rep., 529.

POST, J.

This is an appeal from a decree of the district court for Douglas county restraining the defendant from proceeding under a contract with the city of Omaha providing for the removal of the garbage, offal, dead animals, etc., from said city. In view of the importance of the question at issue it is deemed proper to copy at length from the petition, to-wit:

"The plaintiff states to the court that he is a citizen and resident of the city of Omaha, Nebraska, and a taxpayer therein, and has been such resident of the city of Omaha and taxpayer therein for, to-wit, the period of eight years, and he brings this action in said capacity, as a taxpayer and citizen of said city, against this defendant, Alexander MacDonald, and states to the court the following facts:

"That on the 21st day of July, 1893, said Alexander MacDonald, the defendant herein, made and entered into a pretended contract or agreement with the city of Omaha, under and by the terms of which for a period of ten years from and after January 1, 1894, said Alexander MacDonald, in consideration of being allowed the right to remove dead animals, garbage, offal, night soil, etc., within the city of Omaha, for the period of ten years from and after January 1, 1894, under the terms and stipulations contained in said pretended contract, a copy of which is hereto attached, marked 'Exhibit A,' and made a part hereof as though incorporated at length in the body of this petition, agreed to pay the said city of Omaha, annually, for such privilege, at the end of each year, during the existence of said contract, the sum of $250.

"Plaintiff alleges that under and by virtue of the terms of said pretended contract the defendant is given an exclusive privilege and right, which is illegal and contrary to

law, and is permitted thereunder to make large profits in the transaction of the business therein specified, and that the compensation fixed by said contract or agreement is burdensome upon the taxpayers of said city and is in excess of the reasonable value of the services to be so rendered.

" The plaintiff further says that the contract as aforesaid is unlawful in this, to-wit, that the privilege of removing garbage, dead animals, offal, night soil, etc., necessary to be removed, under the requirements of the board of health, as set out in said pretended contract or agreement with said city and the defendant, is a franchise, and that no authority to grant said franchise to said defendant Alexander Mac-Donald was ever voted by the citizens and legal voters within and for said city of Omaha, Nebraska, and that the city council and the municipal authorities of said city of Omaha had no right or authority whatever to make and enter into any such contract.

" Plaintiff says that he is informed and believes that the said defendant is about to enter upon the execution of his said pretended contract with the said city, and if permitted to do so will, under color of authority as shown by said pretended contract, levy and assess upon said taxpayers of the city of Omaha and this plaintiff unlawful dues for the removal of garbage, dead animals, offal, night soil, etc.

" Plaintiff alleges that he is without remedy at law.

" Wherefore plaintiff prays that said pretended contract between the said city of Omaha and said Alexander Mac-Donald be declared null and void and set at naught, and that the defendant, his agents, employes, and servants, be perpetually enjoined from proceeding under said pretended contract to remove dead animals, garbage, offal, night soil, etc., or any other filth required to be removed by board of health or the ordinances of said city of Omaha, and for such other relief as to the court may seem meet. "

The contract to which reference is therein made is as follows:

"This agreement, made and entered into this 21st day of July, 1893, by and between the city of Omaha, party of the first part, and Alexander MacDonald, party of the second part,

"Witnesseth: That the party of the second part, in consideration of being allowed to remove and make use of all the dead animals, garbage, offal, night soil, etc., necessary to be removed, as may be required by the board of health or ordinances of said city of Omaha, during the period of ten years commencing January 1, 1894, or from such time prior to said date as may be required by the mayor and council, hereby agrees, in accordance with the ordinances of said city now existing or hereafter passed, and in accordance with the rules and regulations of the board of health of said city, and as may be required by the commissioner of health upon payment of the charges herein authorized, to remove to some place or places at least two and one-half miles outside of the corporate limits of said city, and if within three miles of the corporate limits of said city to such place or places as may be designated by said board of health, and dispose of the same in such manner as not to cause or create a nuisance, all dead animals, garbage, manure, ashes, filth, offal, night soil, etc., as may now or hereafter during the existence of this contract be required to be removed by said ordinances, rules or regulations at not exceeding the prices following, to-wit:

"Each dead animal weighing over 500 pounds, $2.00.

\*      \*      \*      \*      \*      \*      \*

"Whenever the owner of any dead animals found in the public streets or at any public place is unknown, the said party of the first part agrees to pay to said party of the second part the sum above specified for removing such animals upon satisfactory proof being furnished of the removal of any such animals and that the owner thereof is unknown.

"It is further understood and expressly agreed that for

the privileges herein granted the party of the second part shall anually pay to the said party of the first part at the end of each year the sum of two hundred and fifty ($250) dollars.

"It is further understood and expressly agreed by said party of the second part that at all times during the existence of this contract he shall be subject to the orders of said board of health and to the ordinances, of said city and that he will promptly and faithfully comply with the same.

"It is further understood and agreed that said party of the second part, for the purpose of removing said dead animals, garbage, manure, ashes, filth, offal, night soil, etc., shall be permitted to load the same upon cars at five places as near equally distant from each other as is practical, such places for loading cars to be approved by the board of health of said city, and to be subject to change from time to time as said board of health may require."

\*        \*        \*        \*        \*        \*        \*

To the foregoing petition a general demurrer was interposed, which was overruled, and the defendant refusing to plead further, a decree was allowed as prayed, and which is the decree involved in this appeal.

The issue involved is thus tersely stated by counsel for plaintiff: "There is one question only presented by the demurrer, and that is whether the contract is an exclusive franchise." The plaintiff has assumed the affirmative of that position, and asserts that said contract is in contemplation of law a franchise, and, therefore, within the prohibition contained in section 15 of article 3 of the constitution. The provision of said section which is invoked in this action is as follows: "The legislature shall not pass local or special laws in any of the following cases, that is to say: \* \* \* Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever. In all other cases where a general law can be made applicable, no special law shall be enacted."

From a careful analysis of that provision it would seem that it was intended, not as a restriction upon the power of the legislature over the subject involved, but rather as a limitation in respect to the manner of the exercise of that power. The precise limitation of the legislative power to confer by general law privileges in their nature exclusive is foreign to our present inquiry. It is sufficient for the purpose of this controversy that, according to recognized rules of construction, the people of the state must be understood to have conferred upon the legislature all of the sovereign power resting in them, subject only to the limitations of the state and national constitutions, for, as said by Judge Redfield in *Thorpe v. Rutland & B. R. Co.*, 27 Vt., 140, the American legislatures have the same unlimited power, except when restrained by written constitutions, as the British parliament. We might safely rest our conclusion upon the reasons stated, but there are other considerations suggested by the record which it is deemed proper to notice.

It will be observed that no claim is made to the effect that the contract complained of is unauthorized by the ordinances of the city of Omaha. The inference, therefore, is that it was executed in pursuance of an ordinance having at least the form of law. The question is thus presented whether the contracting for the removal of the garbage, offal, and other unwholesome substances by contract for a term of years is an assumption of power by the city in excess of that conferred by chapter 12*a*, Compiled Statutes, entitled " Metropolitan Cities," and which, for convenience, will be referred to as its "charter." By section 23 thereof it is provided that "the mayor and council shall have power to make and enforce all police regulations for the good government, general welfare, health, safety, and security of the city and the citizens thereof, in addition to the police powers expressly granted herein, and in the exercise of the police power may pass all needful

and proper ordinances," etc.  By section 27 it is provided that "the mayor and council shall have power to prevent any person or persons from bringing, depositing, having, or leaving upon or near his premises or elsewhere within the city, any putrid or diseased carcass, or any putrid, diseased, or unsound beef, pork, poultry, fish, hides, or skins of any kind, or any other unwholesome substance, and to compel the removal of the same at the expense of such person or persons." It requires no argument to prove that the subject of the contract before us is within the strict letter of these provisions of the charter.  The boundary line which divides the police power of the state from the other functions of government is often difficult to discern. As said by Shaw, C. J., in *Commonwealth v. Alger*, 7 Cush. [Mass.], 85: "It is much easier to perceive and realize the existence and sources of this power, than to mark its boundaries, or prescribe limits to its exercise." It may, however, with safety be asserted that the legislature cannot under the guise of police regulations arbitrarily invade personal rights and private property.   On the other hand it should appear to the court, when such regulations are called in question, that they have, in fact, some relation to the public health or public welfare, and that such is the end sought to be attained thereby (*In re Jacob*, 98 N. Y., 98; *Millett v. People*, 117 Ill., 303); but the removal of the noxious and unwholesome matter mentioned in the contract tends directly to promote the public health, comfort, and welfare, and is, therefore, a proper exercise of the police power. Nor is the fact that in this instance the city has by contract conferred an exclusive privilege material.   From the power thus conferred upon the city is implied the duty to determine the means and agencies best adapted to the end in view.   The means adopted appear to be not only a reasonable and necessary regulation, but a judicious exercise of the discretion conferred upon the city.   That the object of all such regulations can be best attained by entrusting the

work in hand to a responsible contractor who possesses the facilities for carrying it on with dispatch and with the least possible inconvenience to the public is apparent to all. In the case of *Vandine, Petitioner*, 6 Pick. [Mass.], 187, Putnam, J., referring to a similar regulation of the city of Boston, said : " It seems to us, however, that the city authority has judged well in the matter. They prefer to employ men over whom they have an entire control by night and by day, whose services may be always had, and who will be able from habit to do this work in the best possible way and time. Practically we think the main object of city government will be better accomplished by the arrangement adopted, than by relying upon the labor of others against whom the government would have no other remedy than by a suit for breach of contract.    *    * We are satisfied that the law is reasonable, and not only within the power of the government to prescribe, but well adapted to preserve the health of the city." (See, also, *River Rendering Co. v. Behr*, 7 Mo. App., 345; *Walker v. Jameson*, 37 N. E. Rep. [Ind.], 402 ; Tiedeman, Limitations of Police Power, p. 316 ; and also, as applicable in principle, *Boehm v. City of Baltimore*, 61 Md., 259; *State v. Lowrie*, 49 N. J. Law, 391; *People v. Gordon*, 45 N. W. Rep. [Mich.], 658 ; *Kilvington v. City of Superior*, 83 Wis., 222.) The alleged excess of power is a mere sanitary measure, as obviously so as the familiar and necessary quarantine for the detention of persons exposed to contagious diseases. In either case, the privilege, although exclusive, is but an incident to the proper exercise of the general police power of the state. The judgment of the district court is therefore reversed and the cause remanded for further proceedings therein

REVERSED.