## CITY OF BRECKENRIDGE v. McMULLEN.
### (No. 10804.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 24, 1923.)

1. **Injunction ⬷105(1)—Generally equity cannot be invoked to enjoin criminal prosecutions.**

Ordinarily a court of equity cannot be invoked to enjoin criminal prosecutions, since equity is concerned only with the protection of civil and property rights, and is intended to supplement and not to usurp the functions of the courts of law.

2. **Injunction ⬷105(1)—Criminal prosecution not enjoined where applicant has adequate remedy at law.**

Equity cannot be invoked to enjoin criminal prosecutions where the applicant has a plain, adequate, and complete remedy at law.

3. **Equity ⬷1—Equity intended to supplement and not usurp functions of courts of law.**

Equity is concerned only with the protection of civil and property rights, and is intended to supplement and not usurp the functions of the courts of law.

4. **Injunction ⬷105(1) — Proper remedy against multiplicity or oppressiveness of criminal prosecutions.**

Equity may intervene to restrain a multiplicity or oppressiveness of criminal prosecution.

5. **Municipal corporations ⬷607—Removal of garbage within police power.**

It is within the police power of a city to pass ordinances and make regulations governing the removal of garbage.

6. **Municipal corporations ⬷626—Municipality may classify occupations and prescribe what constitutes a nuisance.**

A municipality may classify persons, organizations, and corporations according to their business, and may apply different rules to those which belong to different classes, and prescribe what constitutes a nuisance, and such determination should be upheld in doubtful cases where a certain thing may or may not be a nuisance, depending upon a variety of circumstances requiring judgment and discretion on the part of the city authorities in the exercise of their functions.

7. **Constitutional law ⬷278(4)—Ordinance as to removal of garbage held not violative of due process clause.**

An ordinance classifying particular matter as "garbage," and prohibiting any one but a licensed garbage officer from hauling such garbage, *held* not to deprive one who had been engaged in the business of hauling garbage prior to enactment of ordinance of his property rights in violation of the due process clause of the Constitution (Const. art. 1, § 19); the enactment of such ordinance being within the police power of the city.

8. **Monopolies ⬷4—City held empowered to make contract with particular person for hauling of garbage.**

A city had the right to make a contract with a particular person giving him the exclusive right to haul all of the garbage in the city, and providing the fee or charges to be made for such hauling.

Appeal from District Court, Stephens County; W. F. Schenck, Judge.

Suit by D. W. McMullen against the City of Breckenridge. Judgment for plaintiff, and defendant appeals. Reversed.

T. Edgar Johnson, of Breckenridge, for appellant.

Benson & Dean and A. O. Arnold, all of Breckenridge, for appellee.

BUCK, J. D. W. McMullen brought suit in the district court of Stephens county against the city of Breckenridge, its mayor, commissioners, and city secretary, seeking to restrain them from enforcing against him a certain ordinance passed by the board of commissioners, dealing with various matters, and among those with the handling of garbage and creating the office of a licensed garbage officer, and making it an offense for any one but a licensed garbage officer of said city or his assistants "to haul, move, carry, convey or in any way transport along, over, or across any street, road or right of way within said city, any night soil, trash, débris, or any matter which is not valuable." The ordinance provided a penalty of $100 for each day that any one not a garbage officer hauled or transported such described garbage over the streets of the city.

Appellee alleged that for some time prior to the filing of the petition for injunction he had been engaged in the legitimate business of hauling and moving from the premises for various and sundry persons the material designated in and defined in said ordinance as "garbage," and that he had earned $1,200 per year therefrom; that such occupation was the business of plaintiff whereby he made a living for himself and those dependent on him; that said occupation is a legitimate one, and that it is the desire of plaintiff to perform the duties of said business in a legitimate manner; also that this ordinance excluded and prohibited plaintiff from hauling and moving garbage off his own premises; wherefore he prayed that the city of Breckenridge and its officers be restrained from interfering with plaintiff or any of his employés while hauling the materials designated and defined as "garbage." Upon the presentation of the petition, the judge, in vacation, granted the writ as prayed for, but upon final hearing he perpetuated the injunction only so far as to restrain the city and its officers from interfering with the petitioner

⬷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

while hauling "any trash, manure, refuse matter, broken ware, discarded tin, dishwater, slops, swill, boxes, discarded meat, bread stuffs, and fruits of all kinds, whether of value or not, so long as the same is hauled and transported in a careful and prudentlike manner."

The court dissolved the temporary restraining order in so far as it restrained the officers of the city from interfering with the petitioner while hauling and transporting over the streets and alleys of Breckenridge "any night soil, offal, dead fowls, dead cats. rats, and all stale and discarded garbage, the accumulation of which or decomposition of which has become nauseous or produces offensive odors." From this judgment, the defendant city of Breckenridge has appealed.

Appellant has filed its brief in this court, but no brief has been filed by appellee, though he cites some authorities claimed to be in support of his contention in his petition.

No question is raised as to the legal requirements being observed in the passage of this ordinance. It is, in effect, conceded that the ordinance was passed with due regard to such requirements, though there is a contention that the ordinance is invalid because it interferes with the lawful exercise of petitioner's business, claimed to be a legitimate one, and creates a monopoly in favor of the garbage officer designated by the city. It is further claimed that the ordinance is in violation of article 1, § 19, of the Constitution of the state of Texas, which says:

"No citizen of this state shall be deprived of life, liberty, property, privileges or immunities. or in any manner disfranchised, except by the due course of the law of the land,"

in that it deprives the plaintiff of his property rights. That the right to pursue a chosen legal occupation and employment is a property right, and that he is entitled to pursue this occupation without the fear of being disturbed and harassed by false arrests and detention and being forced to employ legal advice and counsel, etc.

[1-3] Ordinarily, a court of equity cannot be invoked to enjoin criminal prosecutions. This is true where the applicant has a plain, adequate, and complete remedy at law. This rule has been applied alike whether the prosecutions or arrests sought to be restrained arose under statutes of the state or under municipal ordinances. This general rule is based upon the principle that equity is concerned only with the protection of civil and property rights, and is intended to supplement, and not usurp, the functions of the courts of law. See cases cited in City of Tyler v. Story, 44 Tex. Civ. App. 250, 97 S. W. 856. It has been held that there are some exceptions to this rule, for instance, where the intervention of equity becomes necessary to protect the franchise of a business corporation. City of Austin v. Cemetery Associa-

tion, 87 Tex. 337, 28 S. W. 528, 47 Am. St. Rep. 114; City of Atlanta v. Gaslight Co., 71 Ga. 106; Southern Express Co. v. Ensley (C. C.) 116 Fed. 756; and other cases cited in City of Tyler v. Story.

[4] Another exception to the rule is that equity may intervene to restrain a multiplicity or oppressiveness of criminal prosecution. In City of Tyler v. Story, supra, it is said:

"Thus, where some 77 prosecutions were pending under a city ordinance, a court of equity stayed all but one, so the liability of the defendant might be determined without a multiplicity of suits. Third Ave. R. Co. v. New York, 54 N. Y. 159. Also, where complainant was arrested several times under an ordinance for occupying a wharf to which he claimed title, and fined in each case in an amount too small to allow an appeal, equity enjoined further proceedings until claim of title was determined. Shinkle v. Covington, 83 Ky. 420. But to give a court jurisdiction to prevent a multiplicity of suits at law, there must be a right affecting many persons; and, if the right is disputed between two persons only, not for themselves and all others, a bill for an injunction will not lie unless the complainant's rights have been established at law. Chicago, B. & Q. R. Co. v. Ottawa, 148 Ill. 397, 36 N. E. 85; Wallack v. Society for Reformation of Juvenile Delinquents, 67 N. Y. 23."

In the case of Davis v. American Society, 75 N. Y. 362, cited in Greiner-Kelley Drug Co. v. Truett, 97 Tex. 377, 79 S. W. 4, it was alleged that plaintiffs were engaged extensively in the business of slaughtering hogs in the city of New York, and that they conducted their business in the most approved, humane, and painless manner. They further alleged that Bergh, the president of the Society, came to their place of business and announced to them and their employés that they must discontinue slaughtering hogs by the methods then used, and thereupon arrested the plaintiff Crane and one of such employés for alleged cruelty to animals, and threatened that he would return in one week, and, if he then found the plaintiffs or others carrying on said business in the same way, he would arrest all persons engaged in it, and stop the business, as often as he found plaintiffs conducting it in that way. The New York court held that Bergh was acting under a valid law and regular authority, and that he had the right to make the threatened arrests if the plaintiffs were actually engaged in violating the law to prevent cruelty to animals. The only question involved for contestation was whether, as a matter of fact, they were guilty or innocent of such violation, and the court held that a court of equity could not be invoked to determine that question. So, in Greiner-Kelley Drug Co. v. Truett, supra, it was held that a court of equity would not issue an injunction to restrain criminal prosecutions of a wholesale druggist who was selling liquors to retail drug-

gists in the ordinary course of trade. A local option law prohibiting the sale of intoxicating liquors in Grayson county having been passed, and the drug company, being domiciled in that county, and engaged in selling drugs by wholesale, instituted this proceeding to enjoin the county attorney of Grayson county from prosecuting its salesmen for sales of alcohol as a drug to retail druggists in the ordinary course of plaintiff's business. The court decided this issue without a determination of whether such act would be a violation of the law or not, evidently on the ground that equity will not interpose to prevent criminal prosecutions unless such prosecutions come within some of the exceptions mentioned in the authorities. Equity will intervene to enjoin criminal prosecutions under a law or ordinance which is void or unconstitutional. So equity has power to prevent the enforcement of a law impairing the obligation of a prior contract. 22 Cyc. 884, § 3.

[5] But does the ordinance in question come within any of the exceptions, so that applicant below can enjoin its enforcement? The removal of garbage comes under the powers of a municipality, and it is within the police power of a city to pass ordinances and make regulations governing the same. In 2 Beach on Public Corporations, § 995, it is said:

"A by-law of a city prohibiting any person not duly licensed by its authorities from removing the house dirt and offal from the city is not in restraint of trade, but reasonable and valid, on the ground that, in the interest of public health, a city is justified in providing for some general system for removing offensive substances from the streets by persons engaged by the city, and responsible for the work at such times as they are directed to attend to it."

So Dillon on Municipal Corporations, § 369, is as follows:

"Our municipal corporations are usually invested with power to preserve the health and safety of the inhabitants. This is, indeed, one of the purposes of local government, and reasonable by-laws in relation thereto have always been sustained in England as within the incidental authority of corporations to ordain. It will be useful to illustrate the subject by reference to some of the adjudged cases. An ordinance of a city prohibiting, under a penalty, any person not duly licensed therefor by the city authorities from removing or carrying through any of the streets of the city any house dirt, refuse, offal, or filth, is not improperly in restraint of trade, and is reasonable and valid. Such a by-law is not in the nature of a monopoly, but is founded on a wise regard for the public health. It was conceded that the city could regulate the number and kind of horses and carts to be employed by strangers or unlicensed persons, but practically it was considered that the main object of the city could be better accomplished by employing men over whom they have entire control, night and day, who are at hand, and able, from habit, to do the work in the best way and at the proper time."

In Walker v. Jameson, 140 Ind. 591, 37 N. E. 402, 39 N. E. 869, 28 L. R. A. 679, 683, 49 Am. St. Rep. 222, the Supreme Court of Indiana sustained a municipal contract for the removal of garbage, giving the contractor the exclusive right to remove it at a certain price per pound payable by the persons who produced the garbage, and specially holding that such contract is not an attempt to create a monopoly. In this case the court said:

"It resolves itself solely into a question of power, and not of mere reasonableness. We recognize the rule that a municipal corporation has no power to treat a thing as a nuisance which cannot be one; but it is equally well settled that it has the power to treat as a nuisance a thing that, from its character, location, and surroundings, may or does become such. In doubtful cases where a thing may or may not be a nuisance depending upon a variety of circumstances requiring judgment and discretion on the part of the town authorities in exercising their legislative functions, under a general delegation of power like the one we are considering, their action, under such circumstances, would be conclusive of the question. Baumgartner v. Hasty, 100 Ind. 577, 578, 50 Am. Rep. 830. In 15 Am. & Eng. Encyclop. Law, 1173, it is said: 'Municipal corporations are usually given authority to pass ordinances providing for the preservation of public health. This is one of the police powers of the state, and there can be no doubt that the sovereignty has the right to delegate this power to municipal authorities.' * * * Vandine, Petitioner, 6 Pick. 187, 17 Am. Dec. 351; Cooley, Const. Lim. (6th Ed.) p. 739; Tiedeman, Pol. Powers, p. 316; Dill. Mun. Corp. §§ 141, 142. In the case of Boehm v. Baltimore (1883) 61 Md. 259, it was held that the city, under the power to preserve the health and safety of its inhabitants, had the undoubted right to pass ordinances creating boards of health, appointing health commissioners with other subordinate officers, regulating the removal of house dirt, night soil, refuse, offal, and filth by persons licensed to perform such work, and providing for the prohibition, abatement, and suppression of whatever was intrinsically and inevitably a nuisance. The case of Vandine, Petitioner, supra, is in point here. It directly adjudges that a by-law of the city of Boston prohibiting any one not licensed by the city from removing house dirt and offal from the city is valid. On the trial the court instructed the jury that the subject of regulation was one on which it was proper for the city to legislate, it having reference to the public convenience and the health of the inhabitants; * * * that it was the duty of the city to remove from the streets and houses all nuisances which might generate disease or be prejudicial to the comfort of the inhabitants; and it was both reasonable and proper that it should be in their discretion to contract with persons to perform the work, so that it might be done on a general system. If it were found, on experiment, that the duty would not be thoroughly and faithfully performed, or would be attended with more expense to the city, if individuals should re-

move these substances in their own carts and upon their own account, it was competent for the city government to enact a by-law. which should subject all such persons to the vigilance of that government, and which should require them to be first licensed. The jury were further instructed that so far as, by virtue of the general laws of the commonwealth, the city council had power to make by-laws for governing the city, these regulations. were binding on all persons actually resident within its limits, either for business or pleasure, and whether inhabitants or strangers; that the object of the by-law being to secure to the city the regular and effectual removal, by public authority, of all sources of nuisance which are collected and accumulated in the houses in the city, by not suffering individuals under no obligation of trust to interfere in the same, it amounted to the prohibition of a nuisance, and that, so far as it affected trade, it was not a restraint, but only a regulation, of it. The defendant excepted to these instructions, and, on appeal, urged chiefly that the by-law was void, being in restraint of trade; also, that it created a monopoly, and that the city had no right to say it should be removed only by a person having a license. In ruling on this question the court upheld the instructions of the trial court, and said: 'The great object of the city is to preserve the health of the inhabitants. To attain that, they wisely disregard any expenses which are deemed to be requisite. They might probably have these offensive substances carried out of the city without any expense, if they would permit the people from the country to take them away at such times, and in such manner, as would best accommodate them. Every one will see that, if this business were thus managed, there would be continual moving nuisances at all times, and in all the streets of the city, breaking up the streets by their weight, and poisoning the air with their effluvia. * * * It seems to us * * * that the city authority has judged well in this matter. They prefer to employ men over whom they have entire control by night and by day, whose services may ·be always had, and who will, be able, from habit, to do this work in the best possible way and time. Practically, we think the main object of the city government will be better accomplished by the arrangement they have adopted, 'than by relying upon the labor of others, against whom the government would have no other remedy than by a suit for a breach of contract. The sources of contagion and disease will be speedily removed in small loads, which will not injure the pavements nor annoy the inhabitants. We are satisfied that the law is ·reasonable, and not only within the power of the government to prescribe, but well adapted to preserve the health of the city."

See the Nebraska case of Smiley v. MacDonald, 42 Neb. 5, 60 N. W. 355, 27 L. R. A. 540, 47 Am. St. Rep. 684, to the same effect; 28 Cyc. 715 et seq., and note 81, on page 719.

In Lodge v. Johnson, 98 Tex. 1, 81 S. W. 18, our Supreme Court said:

"It is well settled by the decisions of this court, as well as by the decisions of the Supreme Court of the United States, that the Legislature may classify persons, organizations and corporations according to their business and may apply different rules to ·those which belong to different classes."

[6] Likewise a municipality may exercise, within its scope, a similar power of classification, and in the exercise of this power it may prescribe what constitutes a nuisance, and such determination should be upheld in doubtful cases where a certain thing may or may not be a nuisance, depending upon a variety of circumstances requiring judgment and discretion upon the part of the city authorities, in the exercise of their functions.

[7] We believe the city of Breckenridge had authority under the law to classify "manure. any refuse matter, broken ware, discarded tin, paper, trash, boxes, slops, dead fowls, dead cats, rats, all stale and discarded meats, together with any and all other matter or accumulation the decomposition of which becomes nauseous or produces offensive odors." as garbage.

[8] We further believe that the municipal authorities had the power and right to make a contract with a particular person, giving him exclusive right to haul all of the garbage in the city of Breckenridge, and providing the fee or charges to be made for such hauling, etc. 28 Cyc. p. 719. 19 R. C. L. § 128, says, in part, as follows:

"In spite of the fact that garbage, after it has been discarded as food for human consumption, has a certain value as food for hogs or for rendering purposes, its value for such purposes is so slight as compared with the danger to the public health if the owner is allowed to dispose of it without restriction that ordinances have been unanimously upheld which prohibit the carrying of garbage through the streets except by certain designated scavengers in the employ or under the control of the municipality, and thus in effect deprive the owner of the opportunity of receiving compensation for his garbage, interfere with the source of supply of hog raisers and renderers, and destroy the means of livelihood of other scavengers."

Under this ordinance, the plaintiff was not prohibited from hauling anything of value over the streets of Breckenridge, but a penalty was provided for hauling any of the articles or things mentioned in section 27, and heretofore quoted in this opinion. It will be further noted that there was introduced by the defendant an amendment to section 27, which only inhibits the hauling over the streets by any person other than the garbage officer or his assistants, "any night soil. trash, débris, or any matter which is not valuable." The purpose of the amendment seems to limit the list of articles which persons other than the garbage officer are inhibited from hauling. While the statement of facts does not show that these amendments have been passed, and therefore we cannot give them any serious consideration, yet the fact that they have been drawn up and in-

troduced in the commission indicates a disposition on the part of the commissioners to eliminate some of the features of the old law against which the petitioner below levels his objections.

On the whole, we believe that the trial court erred in not dissolving the temporary injunction granted, and in sustaining in part such injunction. Therefore the judgment rendered by the trial court is reversed, the permanent injunction granted is set aside, and this opinion is ordered certified to the trial court for observance.