JOHN UNDERWOOD, Appellant, *v.* JOHN GREEN, Respondent.

To justify a conversion of the plaintiff's property, under a city ordinance directing that "all dead animals," * * * "be forthwith removed and disposed of by removal beyond the limits of the city, or otherwise, so as most effectually to secure the public health," it must be shown that the dead animals removed were, or would become, in some way dangerous or deleterious to public health.

Evidence that such animals died by suffocation, and animals so dying were sometimes taken to market and sold for food, and that such removal was by direction of the city inspector, will not afford a sufficient justification.

(Argued January, 1870; decided March 18th, 1870.)

APPEAL from a judgment entered upon the decision of the Superior Court of the city of New York, at General Term, reversing a judgment entered upon verdict for the plaintiff, and ordering a new trial.

The facts appear in the opinion of the court.

*John H. Reynolds*, for the appellant, cited *Staples* v. *Fairchild* (3 N. Y., 41); *Skinion* v. *Kelly* (18 N. Y., 355); *Bloom* v. *Burdick* (1 Hill, 130).

*A. J. Vanderpoel*, for the respondent, cited *City of Rochester* v. *Collins* (12 Barb., 559); Vandine's case (6 Pick., 187); *Com.* v. *Worcester* (3 Pick., 461); *Shaw* v. *Cummings* (7 Pick., 76); *Baker* v. *City of Boston* (12 Pick., 183); *Hall* v. *Robinson* (2 Comst., 293); *Wilson* v. *Cook* (3 E. D. Smith, 252).

EARL, Ch. J.   This is an appeal from an order made at a General Term of the Superior Court of the city of New York, reversing a judgment in favor of the plaintiff, and ordering a new trial.

The action was brought to recover the value of forty-two hogs belonging to the plaintiff, taken by the defendant on the 18th day of November, 1862, from the cars of the Hudson River Railroad Co., in the city of New York, and carried away.   The defence was, that the hogs were dead and that they were removed under the direction of the city inspector, under and by virtue of ordinances relative to the city inspector's department, the one relied upon being as follows: "He shall cause all putrid and unsound beef, pork, fish, hides or skins, all dead animals and every putrid, offensive, unsound or unwholesome substance found in any street or other place in the city to be forthwith removed and disposed of by removal beyond the limits of the city, or otherwise, so as most effectually to secure the public health."

It appeared on the trial, that on the 18th day of November, 1862, the hogs arrived on the Hudson River railroad cars at thirty-first street in New York, dead, having died from suffocation on the passage from Albany.   They were worth six dollars apiece for the purpose of being tried out for grease.   The defendant was the offal contractor for the city. The hogs were taken from the cars immediately after their arrival, under the direction of the defendant, by his cartman; and this was done in the presence of plaintiff's agent, who was there to receive the hogs, and who forbade the cartman taking them.

There was no evidence that the hogs were offensive or dangerous in any way to public health, or that the owner had abandoned them, or was unwilling to take proper care of them.   The plaintiff's agent was not requested to take care of them, and they were taken away before he had an opportunity to take care of or remove them.   It was proved that dead hogs had sometimes been taken to the slaughter house, but there was no proof that the plaintiff or his agent had

ever done this, or that there was any intention to make any improper use of these hogs.  It appeared that the defendant acted under orders from the city inspector.

Upon such a state of facts, I am of the opinion that the defendant cannot justify the taking of the hogs under the city ordinance above mentioned.  A dead hog is not *per se* a nuisance, even though it died of suffocation, and is not necessarily dangerous to public health.  The owner may still put it to a useful and innocent purpose.  This ordinance, so far as it relates to "*dead animals*" cannot be literally construed, because if it should be, a city inspector might with impunity remove dead animals provided for food.  The connection in which the terms are used, and the object of the ordinance, render it quite manifest that only such "dead animals" were meant as were nuisances or dangerous or deleterious to public health.  The objects mentioned in the ordinance were required to be removed and disposed of "so as most effectually to secure the public health;" and it seems to follow, that it is only when the public health is in some way endangered or is likely to be, that the removal is authorized or that the inspector has jurisdiction.

While it must be conceded that the inspector, in the discharge of his duties under this ordinance, is clothed with a judicial discretion, yet he is an officer of a limited and special jurisdiction, and when in any given case his power is challenged, he must prove some facts invoking or tending to invoke the exercise of his discretion.  For instance, he could not go into a store and arbitrarily confiscate a stock of hides merely upon the allegation that they were dangerous to public health.  He would have to show that they were putrid or in some way dangerous to public health, and when he had shown this, then he would have made a case calling for the exercise of his discretion.

In this case, the defendant should have shown that these hogs emitted an offensive odor, or that the plaintiff had abandoned or neglected or refused to take care of or remove them, or some fact tending to show that they were likely to

become dangerous to the public health. In the absence of any proof showing any of these facts, and while the plaintiff's agent was there ready and willing to take care of the hogs, there certainly was nothing calling for the exercise of any judicial discretion under the ordinance in question.

The order of the General Term must therefore be reversed.

INGALLS, J., also read an opinion for reversal on the same grounds.

All concur, except HUNT, J.

Order of the General Term reversed and judgment ordered for the plaintiff.