The River Rendering Company v. Behr.

----

THE RIVER RENDERING COMPANY v. BEHR *et al., Appellants.*

Municipal Corporation: REMOVAL OF DEAD ANIMALS: CONSTITUTIONAL LAW. Under the constitution of this State, a city ordinance is void which undertakes to confer upon one person the right to remove and convert to his own use the carcasses of all dead animals, not slain for food, found within the limits of the city, to the exclusion of the right of the owners of the same to remove and use them before they become a nuisance.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*J. E. McKeighan, E. P. Meany* and *L. A. Steber* for appellants.

The construction of the ordinance put upon it by respondent makes it violate section 20 of the bill of rights, which forbids private property from being taken for pri-

vate use, with or without consent of the owner; also, section 30, which forbids the taking of private property for public use without due process of law. *Donovan v. Mayor, etc.*, 29 Miss. 247; *Fisher v. McGirr*, 1 Gray 1, 14. The power of making by-laws for the suppression of nuisances is confined to the suppression and prohibition of acts which, if done, must necessarily and inevitably cause a nuisance. It does not empower the town to impose penalties for the doing of things which may or may not become nuisances, according to circumstances. 1 Add. on Torts, (Wood's Ed.) § 54. Dead animals may become nuisances if not removed in a reasonable time, but if they are so removed they will not. A mere declaration in a city ordinance (even this is not done in the ordinance in question) that a certain thing is a nuisance or an obstruction, does not make it so, unless, in fact, it is a nuisance or obstruction. *Yates v. Milwaukee*, 10 Wall. 497. A dead animal is not *per se* a nuisance, and it is not necessarily dangerous to public health. The owner may still put it to an innocent and useful purpose, and an ordinance which provides for the removal of dead animals cannot be literally construed so as to take away the owner's right to so use it. *Underwood v. Green*, 42 N. Y. 140

*Dyer & Ellis* for respondent.

The question whether it is for the health and best interest of the city to restrict the duty and right to remove dead animals to one particular agency, thereby preventing free traffic in nuisances, is entirely within the control of the city, and its board of health. This is necessarily a part of the municipal system for the preservation of public health, as much so as appointing a single physician or surgeon to a city hospital, instead of opening the doors to the practice or malpractice of all the doctors in the town. The municipal authorities cannot surround this subject with too many safeguards, and the claim of the scavenger

ought not to prevail over the high duty which a government owes to preserve the health and comfort of its people. An exclusive privilege very similar to that possessed by the respondent, was upheld by this court. *State v. Fisher*, 52 Mo. 174. It needs no argument and requires no adjudication to establish the fact, that the dead animals referred to in this ordinance, are *per se* nuisances, and should be removed as summarily and as certainly as possible from the city limits. *City v. Stern*, 3 Mo. App. 48; *River Rendering Co. v. Behr*, 7 Mo. App. 45. The question which is fundamental in this case is: Who shall determine when a carcass has become offensive? At what moment does the animal cease to be innocuous, and become dangerous? Must this question be in each case judicially ascertained before the city's right and duty attaches? Can the determination of this all-important question be safely committed to the appellants? According to the laws of nature, decomposition begins immediately at death, and the danger then commences. The only safe action for the city to take in the matter is to require, as far as possible, the instant removal of the animal when dead, and to provide the means or agency by which the removal can be safely and certainly effected.

The claim of confiscation is not fairly raised by the issues in this case. No owner is complaining of this ordinance, nor is the right or interest of the owner in any way represented or involved herein. But if it were, his rights are amply protected by section 6 of the ordinance. Under proper and necessary restrictions he may obtain a permit and remove his dead animal. And besides this, so far as the carcass is a nuisance, the right of the city to abate or destroy it, is paramount to the owner's right. A nuisance is not a right, it is a wrong. The owner is presumed to be compensated by his share in the advantages arising from the destruction or removal of the nuisance. Mills' Eminent Domain, § 7; 2 Cow. 349, 352; 12 Pick. 184.

HENRY, J.—This is an appeal from the judgment of the St. Louis court of appeals, affirming the judgment of the circuit court, perpetually enjoining defendant from removing dead animals from the city of St. Louis. The grounds of the injunction are, that the acts with respect to which appellants are restrained, are violative of an ordinance of said city, No. 10,062, and the question involved relates to the validity of that ordinance, which is as follows:

"An ordinance to repeal ordinance number 6,745, entitled An ordinance to repeal ordinance No. 6,016, entitled 'An ordinance to amend ordinance No. 5,433,'" and to provide for the removal of the carcasses of dead animals from the streets of the city of St. Louis.

*Be it ordained by the City Council of the City of St. Louis*

Section 1. It shall be the exclusive privilege and duty of the River Rendering Company of St. Louis, for a period of eight years from and after the passage of this ordinance, to remove out of the city and beyond the jurisdiction of the board of health, as now or as may be hereafter established, the remains and carcasses of every dead horse, mare, mule, ox, steer, cow, ass, hog, goat, dog or other animal, (within ten hours after a report shall be made to the said River Rendering Company by the chief of police, or any authorized agent of the board of health, and appropriate them to their own use), observing every care, and using the utmost precaution that the carcasses of said animals be conveyed away in the most inoffensive manner possible, causing them to be covered with tarpaulins or otherwise. The drivers of the teams conveying away said carcasses shall not stop on their way unless detained by some unforeseen accident, under a penalty of not less than five nor more than twenty-five dollars for each offense, which fine shall, upon the conviction of any driver or drivers of such teams, be recovered and enforced as other fines before the police justice.

Section 2. The River Rendering Company shall cause to be removed and placed upon a receiving boat or boats of suitable size, strength and dimensions, all carcasses and remains of dead animals mentioned in section 1 of this ordinance, within six hours after a report shall be made to said River Rendering Company, in conformity with the provisions of said section 1; and no rendering or manufacturing upon such receiving boat or boats shall be done inside the city limits, and only in such manner and in such place as may be designated by the board of health, and so that no nuisance may be created thereby; provided, however, that during the winter months, when the river is blocked with ice, such steam rendering or manufacturing may be done in such manner, in such place, and at such hours as may be designated by the board of health.

Section 3. The River Rendering Company shall, before being authorized to perform the duties and enjoy the privileges granted by this ordinance, execute to the city of St. Louis a bond, with good and sufficient securities, in the sum of $5,000, to be approved by the mayor, and filed and preserved in the office of the city register, conditioned for the faithful and punctual performance of the duties imposed by the provisions of this ordinance.

Section 4. It shall be the duty of the police department to notify the River Rendering Company, their officers or agents, of the whereabouts of every animal carcass which they may find, or of the existence of which, within the city limits, they may be informed, as soon as possible, and within six hours of their being so notified, it shall be the duty of said River Rendering Company to remove the same in the manner specified in section 1 of this ordinance; and, upon the failure of said company to so remove the carcass of any dead animal within the time so specified, the manager or chief officer thereof shall be subject to a fine of $10, for the first offense, and for every subsequent offense $20, to be recovered as other fines before the police justice.

Section 5.    The River Rendering Company, or any person, co-partnership of persons, or corporation who shall remove the carcass or carcasses of any dead animal or animals, not slain for the purpose of human food, shall give a bond of $5,000 as a guaranty that none of the product of any carcass specified in section 1 of this ordinance shall be employed or utilized for purposes of human food, and that all grease and other products rendered or manufactured or packed for use or transportation to or from market in the city of St. Louis or elsewhere, shall be branded with a burning brand, as follows: "Product of dead animals, St. Louis."

Section 6.    Hereafter it shall not be lawful for any person, co-partnership of persons or corporation, except the River Rendering Company, to remove the carcasses of any dead animals as specified in this ordinance, without first having obtained a permit so to do from the clerk of the board of health, said permit specifying the date when and the person to whom issued, the kind of animal or carcass to be removed, the place to and from which the same is to be taken, and the character of the products to be derived from the same.

Section 7.    The River Rendering Company shall have free use of the levee for receiving boats provided for in section 2 of this ordinance, at not less than two suitable places, one of which shall be near the northern and one near the southern portion of the city, such places to be designated by the city engineer with the approval of the board of health.

Section 8.    Any failure of the River Rendering Company to comply with or fulfill any of the provisions of this ordinance, or when so reported to the city council by the board of. health; and upon the recommendation of said board of health, this ordinance may be amended, altered or repealed.

Section 9.    The River Rendering Company, at the time of filing the bonds provided for in sections 3 and 5 of

this ordinance, shall also file their written acceptance of the provisions of this ordinance.

Section 10.　Any person or persons violating any of the provisions of this ordinance shall be adjudged guilty of a misdemeanor, and on. conviction thereof, before the police justice, shall be fined in a sum not less than ten nor more than fifty dollars for each offense.

The plaintiff's petition alleges that in 1876 it accepted the privileges and duties conferred and imposed upon it by said ordinance, and executed the bond required, and provided all the necessary boats and other means for rendering the carcasses and remains of dead animals from said city : that on the — day——, 1878, defendant, without having any permission to do so from the board of health of said city, and in violation of said ordinance, began to remove the carcasses of dead hogs and other animals, not slain to be used for human food, from said city and beyond the jurisdiction of the said board of health.　The answer alleges that defendants are engaged, in St. Clair county, Illinois, in rendering the carcasses of dead animals into grease, bone-black, etc., and purchase such animals in Illinois, and at the Union Stock Yards in St. Louis; that they do not purchase, remove or interfere with such as die in the city of St. Louis and are abandoned by the owners, but only such as are shipped by railroads and boats into said stock yards, and not abandoned, and claimed and possessed by the owners, and that they immediately remove them to their factory in Illinois; that they only claim and have only exercised the right to purchase them from their owners, and to remove them immediately to their factory so that they cannot possibly become a nuisance within said. city, and that in no other manner have they ever interfered with any dead animal owned, purchased or possessed by plaintiff, or abandoned by its owner.　The cause was determined on the petition and answer.　And on the allegations therein, together with an admission that the Union Stock

Yards were within the limits of the city of St. Louis, the perpetual injunction was granted.

Many constitutional questions are discussed in the briefs of counsel and in the opinion delivered by the court of appeals, but we shall notice but one of those questions, because the views we entertain in relation to it, will dispose of the case.

If the ordinance is to be construed as authorizing plaintiff to seize and appropriate to its own use, or otherwise dispose of such property as is described in defendants' answer, in the manner provided by the ordinance, it is, in our judgment, clearly in conflict with several provisions of our State constitution. Section 20, of the Bill of Rights, declares: "That no private property can be taken for private use, with or without compensation, unless by the consent of the owner, except for private ways of necessity, and except for drains and ditches, etc., and that whenever any attempt is made to take private property, for a use alleged to be public, the question whether the contemplated use be really public, shall be a judicial question, and as such judicially determined, without regard to any legislative assertion that the use is public."

Section 30 declares: "That no person shall be deprived of life, liberty or property without due process of law."

Section 21. "That private property shall not be taken, or damaged, for public use without just compensation," which is to be ascertained, "by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law."

We do not deny that the general assembly may confer upon municipal authorities, the power to abate nuisances, and to declare what shall be deemed nuisances, but the latter power cannot be so absolute as to be beyond the cognizance of the courts to determine whether it has been reasonably exercised in a given case or not. *Gates v. Milwaukee*, 10 Wall. 497. The ordinance in question cannot

be maintained as a police regulation. It can never be nec- essary to take from one man his property and give it to another, until the property is in such condition that it is, or is so used that it is likely to become a nuisance; and even in the latter case, until it has become a nuisance, an opportunity should be given the owner to change the use, or make such disposition of his property as will prevent the apprehended danger. Or the city might, as a sanitary measure, by ordinance authorize the seizure and sale of dead animals by its proper officers, in order to prevent an improper sale or disposition of them by the owner, pro- vided it secured to such owner the proceeds of such sale. This might be tolerated, but it would be on the very verge of debatable ground.

By this ordinance, as construed by the two courts which have passed upon it, the property of A in his dead hog or bullock is transferred to B, without the interven- tion of courts or juries, and with no formality whatever, except a notice from the police department of the city, that the hog or bullock is dead, and is to be found at a given place, which may be on the owner's premises in his own possession. The ordinance does not declare that all dead animals found in the city, not killed for human food, are nuisances, and if it did such a provision could not be up- held. A dead hog, or steer or sheep is not *per se* a nui- sance. It was so ruled by the New York court of appeals in *Underwood v. Green*, 42 N. Y. 140. It was there ob- served that: "A dead hog is not *per se* a nuisance, even though it died of suffocation, and is not necessarily dan- gerous to public health. The owner may still put it to a useful and innocent purpose." While a dead animal is not *per se* a nuisance, it may become so, and the city, under her charter, may pass such ordinances as are necessary to prevent it from becoming a nuisance, but she must in such legislation, pay a proper regard to the rights of the owner of such property.

The death of a domestic animal does not terminate

the owner's property, and while he may be required to make such use or disposition of the carcass as will prevent a nuisance, stench or other inconvenience to the neighborhood, the municipal authorities cannot arbitrarily deprive him of his property by giving it to another. If not *per se* a nuisance, it is property in the broadest sense of the term, and all the provisions of our constitution above quoted apply to it. If the ordinance bear the construction placed upon it by respondent, we are clearly of the opinion that it was not competent for the legislature to confer authority upon the city of St. Louis to pass it.

A similar question was passed upon by this court in *Lowry v. Rainwater*, 70 Mo. 152, and we there held an act of the legislature of this State unconstitutional which authorized the acting president of the board of police commissioners of the city of St. Louis, on his own knowledge or information that there was a prohibited gaming table, or other gaming device, kept or used in the city, to issue his warrant to an officer of the police force, to seize such table or device and bring it before him to be publicly destroyed by burning or otherwise. It was contended that this act was valid, as a police regulation, but the court held otherwise, and that decision is in line with adjudications in Massachusetts, 1 Gray 1 ; Michigan, 4 Mich. 126 ; Vermont, 27 Vt. 318, and other states. It is not to be denied that other respectable courts have held the contrary doctrine, but that announced by this court, following the decisions in the states above named, is more just and reasonable, and more in consonance with the genius of republican government.

If such an ordinance as the one in question be upheld, then all our constitutional provisions for the protection of property rights are meaningless and worthless.

The judgment is reversed and the cause remanded. All concur.