The opinion of the court was delivered by
Breaux, J.
The defendant appeals from the sentence and judgment of the Recorder’s Court, condemning him to pay a fine of ten dollars, or in default of payment, to suffer imprisonment during thirty days. The ordinance, he is charged with having violated relates' to the removal from any public or private place, of any garbage or dead animal, and makes it unlawful for any other person than the contractor under the city ordinance to remove and dispose of dead animals'.
He was engaged, on the day of the asserted violation of the ordinance, by the proprietor of a factory where the bodies of dead animals are reduced to tallow, oil or other products, in collecting dead anirnals. They were killed by a passing train, and from the ground where the dead bodies were, they were being removed in a closed cart, to the rendering establishment of his employer in the parish of St. Bernard. The employer of the defendant testified, that they were on his dray, and that they were presumably his, as he always pays the owner for the dead animals carted to his factory. The claim is indirectly by the owner of the rendering plant, who, with the defendant, his servant, urges that the enforcement of the ordinance is an interference with the right to follow a lawful occupation.
The first ground of complaint pleaded by way of demurrer to the affidavit is that the ordinance known as the garbage ordinance is in conflict with prior statutes and illegal, viz.: Act 14 of the Extra Session of 1877; Act 42 of 1882, and Act 94 of 1888, relative to the disposition of offal, garbage, night soil and dead animals.
The Legislature delegated to the municipality the power to pass ordinances to protect the health and maintain the cleanliness of the city. It follows as a natural and unavoidable inference, if it be necessary to that end, to remove offensive carcasses, that the city, through' its Municipal Council, has the authority to ordain that they shall be removed. It is a necessary incident to the powers expressly granted. > While it is true that municipal corporations possess no power not conferred upon them, (either expressly or by fair impli *1662 cation), no principle of interpretation, in our view, would justify the conclusion that the authority to protect health does not include the power to adopt ordinances in terms reasonable, looking to the removal of nuisances. If the ordinance is within the power granted, it must be given the force and effect of a statute.
The question is one of intention. The Legislature having in 1882 adopted an act of incorporation of the city of New Orleans, in which full power is delegated in regard to health, cleanliness, drainage and needful inspection and regulation, it necessarily restricts the effect of any general act that is in conflict with the delegated authority, or that would render inoperative and void an ordinance adopted within the power.
Moreover, the statute of 1877 and the amendments thereto, invoked by the defendant as applying, are not exclusive of other modes. They impose duties upon those engaged in removing dead animals, and prohibits them from dropping in the river dead bodies, save at certain wharves and landings, and orders that they shall tow them in boats from these designated places.
There was a special reason for mentioning how and where to dump dead animals into the river, none for mentioning other means of disposing of these dead bodies on land. In the “ absence of prohibition, express or implied, the terms of the statute will not operate as an exclusion under the maxim, expressio unius.” Sedgwick, p. 31.
As we read the statute, the purpose was to prevent the dumping of garbage and carcasses on the entire river front, thereby polluting the water and infecting the air, and none of the provisions of the statute manifest the intention of adopting exclusive measures requiring all the garbage from all the different points to be dumped into the river and towed away from the places named.
In addition, the act invoked by the defendant applies to the three parishes, Jefferson, Orleans and St. Bernard, and to that extent it is general in its scope.
The special grant of power was not, in our view, repealed by the general law. Qeneralia speeialibus non derogant It cannot fairly be implied that it was the intention to make subordinate the special laws of the municipality to the general laws covering a larger area and other political divisions. Nothing in the reading of the act shows that it was the legislative intention to curtail and limit the grant of *1663 power of the city as to any system best adapted to carry ont some reasonable scheme for the removal of garbage and dead animals. The recall by implication of a power granted is not favored.
The defendant pleads and argues in ways that he had no thought of acting. He was not carting the dead animals to the river to be there disposed of as the statute would require if in full force within the corporate limits of the city. These dead animals have value at rendering plants, and no one is now anxious that they be carried away and dumped into the river.
But the defendant is not concluded by not complying with the statute he invokes. If controlling in the case and operative, its effect may yet be urged by him in his defence.
This brings us to the second contention of the defendant-: that sections of the. ordinance are in conflict with and in contravention of Art. 156 of the Oonstitution, which provides that private property shall not be taken for public purposes without just and adequate compensation.
At this point the question of defendant’s want of interest was propounded at the bar, as he was not the owner of the animals, and was only the driver in charge of the cart. If the company, prosecuting in the name of the State, has no right to the dead animals, it might be regarded as a hardship to compel this driver to pay a fine or suffer imprisonment. He had the right to prove that his occupation was legitimate and not in contravention of any law. Dillon on Municipal Corporations, Vol. 1, p. 441.
These animals were neither offensive or dangerous to public health. They were private property, not abandoned, and had value of which the owner could not be divested, save by the exercise of police power for the public good.
The necessity for the exercise of that power was not shown. One of the purposes of the contract was to' invest the Chemical and Fertilizer Company with the absolute right to take possession of and appropriate all dead animals not slain for human food in certain limits of the city. To sustain that portion of the contract we would have to decide that a dead animal is per se a nuisance; that the ownership terminates at death. There is no question here of the exercise of eminent domain for the public good requiring compensation. The only question is the> right to exercise the police power vel non. If the property is not a nuisance the owner should not be *1664 prevented from obtaining its value and should not be denied the right to make any disposition of it (however innocent and useful). It is not possible under police regulation to take property from one man and give it to another. The city might, as a sanitary measure, after having given the owner the opportunity to dispose of his dead animals, authorize a contractor to cart them away and appropriate them to his own use. In warm climates the police of cities requires regulations that should be enforced with great vigilance to prevent nuisances injurious to health. The necessity of such ordinances would not justify the council in declaring that all dead animals found in the city not killed for human food are nuisances immediately after death.
This is the effect of the ordinance.
We rest the case entirely on the ground that the owner is entitled to reasonable time after the death of the animal to dispose of it or cart it away under the requirements of existing ordinances. The situation and the climate may render it necessary to permit very little time and opportunity for removal. In adopting ordinances which necessarily must be general the owner may be allowed but little time (if public safety requires) for the removal of his dead animals. The authorities agree that the removal must be made as ordained, and that the courts can not contest the manner in which it shall be done and under what sanitary condition, if reasonable.
However limited may be the right of removal it can not be denied entirely without conflicting with the laws regulating the police power.
The laws do not justify an absolute denial of all the owner’s right from the moment of death without the possibility of its becoming a nuisance before a disposition can be made in the owner’s interest. The city invested with the power claimed by the plaintiff as plenary in regard to health and cleanliness can, under proper police regulation, permit the owner during a brief period of time to realize any value his dead animal may have, and at the same time carry out a scheme ample in every respect to protect public health and secure required cleanliness.
After re-examination we affirm our decision in State vs. Payssan, ante, p. 1029.
The argument at the bar has lead us to re-examine the decision and the result is as just expressed. In that case we declined to en *1665 terfcain jurisdiction of one of the issues, being one of fact exclusively. Here we pass upon the illegality of an ordinance only in so far as relates to the removal of dead animals.
It is therefore ordered adjudged and decreed that the judgment of the court a qua be annulled, reversed and avoided, and the defendant discharged.