SCHOEN BROTHERS *v.* THE CITY OF ATLANTA.

1. A city may by ordinance lawfully prescribe that unless the owner of a dead animal, even though the carcass may be of some value, shall remove it or cause it to be removed beyond the city limits, within a specified reasonable time, and to a specified reasonable distance, the municipal authorities may deal with such carcass as a nuisance *per se*, and as such take charge of it and make such disposition thereof as will best conserve the public health.

2. It is not, however, lawful to require that such owner, upon removing the carcass, or causing its removal within the time allowed him for that purpose, shall deposit it beyond the city limits at such place only as may be designated by the municipal authorities, or that, upon his refusing so to do, the city will have it removed at his expense to that particular place; provided the removal intended by the owner contemplates the deposit of the carcass at some other place outside of the city, not itself within a prohibited distance from the city line, and such disposition of it when so deposited as will in any event prevent its becoming a nuisance to, or otherwise injuring any of the inhabitants of the city.

February 7, 1896.

Petition for injunction, etc.    Before Judge Lumpkin. Fulton county.    September 28, 1895.

*Rosser & Carter,* for plaintiffs.
*J. A. Anderson* and *W. M. Davis,* for defendant.

SIMMONS, Chief Justice.

An ordinance of the City of Atlanta provided as follows:

"Whenever the chief of police or sanitary inspectors shall be informed of any dead horse, mule, cow or other animal being within the corporate limits of the City of Atlanta, he or they shall cause said carcass to be removed beyond said limits and then properly buried or disposed of so as not to create a nuisance, and any person or persons other than those employed, who shall remove the carcass of any such animal, shall, on conviction, be fined not more than one hundred dollars or imprisonment not exceeding thirty days, in the discretion of the court; provided, the owner or his

authorized agent may remove such carcass from the city under the direction of the sanitary inspector."

An ordinance subsequently adopted provided that the board of health should be authorized to contract for the removal of all dead carcasses of animals, such as horses, etc., from within the corporate limits, and to authorize the contractor to contract for and collect from the owners of such carcasses not more than a dollar per head; the carcasses to be removed, whether by the owner or the contractor, to such lands or place outside the city limits as should be designated from time to time by the board of health or the sanitary inspector acting for the board. The ordinance further provided, that it should be the duty of any person owning such animal, or any person on whose premises such animal might die or be found dead, to notify the sanitary inspector of the district, or the chief sanitary inspector's office, of the location of such dead animal, in order to its removal by such contractor, within three hours after its death or the discovery thereof, unless the owner should within that time remove or cause the removal of such carcass to the place designated by the board or inspectors; and further, that it should be the duty of the contractor to provide neat and proper vehicles and appliances for the removal of such carcasses without offense to persons living or passing along the routes travelled in such removal, and the board of health should have power at all times to regulate the removal of such carcasses. In pursuance of this ordinance a contract was entered into between the board of health and Kirkpatrick, Fogg & Co., in which it was agreed that the latter should have the exclusive right to remove all such dead animals as died or were killed within the city limits "over the bodies of which the city has any authority," during the three years beginning November 15, 1894, and should have the right to charge and collect a dollar per head for each carcass of horses or like animals, from the owner thereof, unless the owner elected to remove such himself

within three hours from the death of the animal or time of the discovery of its death.

In March, 1895, Schoen Brothers, a firm engaged in the business of dealing in hides and tallow and of rendering the carcasses of animals, were notified by the owner of a horse, which had died at a livery-stable in the City of Atlanta, that if they would send for the carcass and remove it out of the city, they could have it. They accordingly sent a vehicle for the animal, and within three hours after its death removed it outside of the city. They did not take it to the place designated by the sanitary inspector for the deposit of dead animals, to wit, the place of business of Kirkpatrick & Co., beyond the corporate limits, but took it to their own works, which were situated at a distance of several miles from the city. The animal was not offensive at the time of its removal. The owner turned it over to them in order to save the sum of one dollar which he would have been required to pay if the animal had been removed by the contractors employed by the city. Subsequently Schoen Brothers were tried in the recorder's court of the City of Atlanta, upon the charge of having violated the ordinances above referred to, in having removed the animal to a place other than that designated by the city authorities. Upon the trial the facts above stated appeared in evidence. The defendants were found guilty and fined, and took the case by *certiorari* to the superior court. In the recorder's court and in their petition for *certiorari*, they attacked the ordinances in question as illegal, unconstitutional and void. They also filed a petition for injunction, in which the foregoing facts were stated in substance, and it was alleged that the petitioners had theretofore been in the custom of obtaining the carcasses of animals in the City of Atlanta before they became a nuisance, and of hauling them, without charge to the owners, to the works of the petitioners, some three miles beyond the city limits, where the petitioners made use of them in their business of rendering dead stock, and

that for this purpose they were of considerable money value to the petitioners; and that notwithstanding the pendency of the writ of *certiorari* in the case above mentioned, other prosecutions under the ordinances therein alleged to be void had been brought against the petitioners, and the municipal authorities were threatening to bring other like charges against them unless they ceased to remove the carcasses of animals in their course of business, and by that means were seeking to force the petitioners to abandon their said business. The petitioners prayed that the ordinances in question be declared unconstitutional and void, and that the City of Atlanta, its officers and agents, be enjoined from proceeding further with the prosecutions against them, or from instituting other charges against them, or interfering with their property rights or business. A petition was also filed by Kirkpatrick & Co., asking for an injunction against Schoen Brothers. All of the cases, by agreement, were consolidated and heard together. At the hearing numerous affidavits were introduced by Schoen Brothers in support of the allegations of their petition for injunction. The grounds of attack upon the ordinances in question were: that they created a monopoly for the benefit of Kirkpatrick, Fogg & Co.; that they provided for the taking of private property of citizens without compensation, and required them to pay one dollar for the removal of the same when such carcasses could be removed free of charge; that the city had no jurisdiction to prescribe that certain carcasses of animals be deposited at any particular point beyond the corporate limits; that the city could not prescribe any point of deposit beyond the corporate limits; and because the ordinances prescribed no penalty.

The judge dismissed the *certiorari* and sustained the judgment of the recorder; and denied the injunction sought by Schoen Brothers; whereupon they excepted and brought the cases to this court.

Where property has become a nuisance dangerous to the

public health, municipal authorities, when invested with power to abate nuisances, have a right to make such disposition of it as may be necessary for the protection of the public; and they may do this without making compensation to the owner. *Dunbar* v. *City Council of Augusta*, 90 *Ga.* 390; *Mayor etc. of Savannah* v. *Mulligan*, 95 *Ga.* 323. A dead animal is not necessarily a nuisance, and until it does become one, due regard must be had to the property rights of the owner; but since it must necessarily become a nuisance of a very offensive and dangerous character unless some disposition is promptly made of it which will prevent its becoming so, the municipal authorities need not wait until it has actually reached that stage before undertaking to deal with it as a nuisance. They may by ordinance prescribe that where an animal dies or is found dead within the corporate limits, it shall not be allowed to remain there beyond a specified reasonable time, and that the owner shall within that time remove it or cause it to be removed beyond such limits, and to a specified reasonable distance, and that unless he does so, the carcass shall be taken charge of by the agents of the corporation and dealt with as a nuisance *per se.* We do not think, however, that they have a right to prescribe that after the owner or his agent has removed the carcass beyond the corporate limits within the time allowed, it shall be deposited at such place only as shall be designated by the municipal authorities. When the owner has within the prescribed time removed it to a distance sufficiently remote to prevent its becoming in any way a nuisance to persons residing within the corporate limits, we think the municipal authorities have no further concern with it. If its removal beyond the territorial limits of the corporation is lawfully accomplished, there is clearly no ground upon which the corporate authorities can claim any right to interfere then with what the owner does with his property, so long as he does not deposit it at a place so near the corporate limits as to be a nuisance to persons

residing within those limits.    In the case in the recorder's court it appeared that the animal was removed within the time prescribed by the ordinance, and to a place several miles beyond the city, where, so far as appeared, it was in no wise offensive or a source of danger to persons in the city.    The conviction was therefore illegal, and the judge of the superior court erred in overruling the *certiorari*. We think he erred also in not granting an injunction. *Gould & Co.* v. *Mayor etc. of Atlanta*, 55 *Ga.* 678, 688(4); *City of Atlanta* v. *Gate City Gas Light Co.*, 71 *Ga.* 106, 126(5).    As to the right of the municipal authorities to prescribe the mode and agency of removal in such cases, and to grant to particular contractors the exclusive right to conduct such removals at the expense of the owner of the animal, see the following cases, cited by counsel:    *Re* M. E. Lowe (Kan.) 27 Lawy. Rep. Annot. 545; *Smiley v. McDonald*, 27 Lawy. Rep. Annot. 540, s. c. 42 Neb. 5, 47 Am. St. Rep. 684, and see note to this case, and cases cited, 27 Lawy. Rep. Annot. 540; also The River Rendering Co. v. Behr, 77 Mo. 91, reversing 7 Mo. App. 345; s. c. 46 Am. Rep. 6.    *Judgment reversed.*