# CAMPBELL *v.* DISTRICT OF COLUMBIA.

POLICE REGULATIONS; PROPERTY IN DEAD ANIMALS.

1. The death of a domestic animal does not terminate the owner's property in it, and while he may be required to dispose of the carcass so that it will not become a nuisance, the municipal authorities cannot arbitrarily deprive him of his property by giving it to another.

2. The arbitrary refusal by the municipal authorities of a permit applied for by the purchaser of a dead animal, which had not become a nuisance, to remove the carcass in a manner conformable to the police regulations governing the transportation of dead animals through the city, *held* to be unjustifiable, as attempting to deprive the owner of his right of property in the carcass; and a judgment of conviction in the police court of an employee of the owner for removal of the carcass, after the refusal of such a permit, *reversed.*

No. 1124.  Submitted November 5, 1901.  Decided December 4, 1901.

IN error to the police court of the District of Columbia.

The COURT in its opinion stated the case as follows:

This cause came up on a writ of error granted by one of the justices of this court to the police court of the District of Columbia.

The plaintiff in error, Grant Campbell, was tried upon information and convicted of the violation of the police regulations of the District relating to the removal of dead animals.

The case was submitted in the court below upon an agreed statement of facts, which, with the various motions founded thereon and the rulings of the court excepted to, are presented in the bill of exceptions as follows:

The defendant is a driver in the employ of Patrick Mann, whose business is the collection of dead animals and the manufacture of them into fertilizers; that the said Mann has been engaged in that business in the District of Columbia for more than twenty years and is fully equipped for the prompt removal of dead animals, having substantially air-tight wagons for the purpose, as required by section 22, article VIII, of the police regulations of the District of Columbia, which regulation, prior to July 5, 1901, was as follows:

" No dead animal of the horse, mule, or jack kind, and no dead cow, goat, calf, sheep, dog, or swine, or any part of the aforesaid dead animals, shall be transported through any street, avenue, alley or public space within the city of Washington, or the more densely populated suburbs of said city, unless the same shall be conveyed in vessels substantially air-tight, constructed either of wood or metal, or both; nor shall any such dead animal, or part thereof, be deposited or left upon any wharf, street, alley, avenue, or public space within said city; and in all cases where such dead animal or part thereof is transported upon the Potomac river or Eastern branch, it shall be unloaded from the aforesaid vehicle directly into the scow provided for the purpose, covered and closed therein, and thereupon immediately conveyed beyond the District of Columbia, or to such place within said District as may be designated by the health officer, and there so disposed of as, in the judgment of the health officer, not to be

injurious to health, nor offensive to sight and smell: Provided, that this section shall not apply to the transportation of such animals intended to be used for food."

That on December 1, 1900, the Commissioners of the District of Columbia entered into a five-year contract with the Washington Fertilizer Company for the removal of garbage in this city and its more densely populated suburbs; that, being advised that dead animals were in the same category as garbage, and that they had the right to control the removal of the same, said Commissioners incorporated in their said contract the following clause in regard to the collection of dead animals:

" To collect daily, including Sundays, for a period of five years, beginning December 1st, 1900, from every part of the District of Columbia all dead animals and remove them to convenient hauling distance as may be approved by the Commissioners of said District."

That the garbage contractor having complained that it was not getting all the dead animals in the District, said Commissioners, with a view of preventing others than the garbage contractor from removing dead animals, on June 4, 1901, amended the foregoing police regulation by adding thereto the following:

"And provided further that no such dead animal, or part thereof, not intended to be used for food, shall be transported as aforesaid without a permit therefor from the Commissioners."

That on August 6, 1901, the aforesaid Patrick Mann, having purchased a dead horse from one Frank H. Hopkins, for which he paid the sum of one dollar, made the following application in writing to said Commissioners for a permit to remove the same:

" WASHINGTON, D. C., *Aug.* 6, 1901.

*The honorable Commissioners, District of Columbia:*

GENTLEMEN: I hereby make application to remove the carcass of a dead horse from New York avenue and Twenty-

first street — from stable in rear of premises 'occupied by Frank H. Hopkins — to foot of South Capitol street.

I propose to convey said animal in a vehicle substantially air tight, constructed of wood and metal, in all respects in accordance with section 22, article VIII, of the police regulations; said carcass to be loaded on a scow at the foot of South Capitol street and transported down the Potomac river to Giesborough, where my fertilizer works are located. I have purchased from and paid the owner for said carcass, and the same has not yet become a nuisance, nor offensive to the senses of sight and smell.

Very respectfully,

PATRICK MANN."

The Commissioners, after consideration of the above application, refused the same; that, on being notified of the action of said Commissioners, the said Mann directed the defendant to remove the dead horse in question, which he did, and thereupon the defendant was arrested and brought before this court charged with violating the aforesaid police regulation.

That the carcass of the animal in question was worth commercially to the said Mann the sum of eight dollars; that the carcass at the time it was removed by the defendant had not become a nuisance injurious to health, and was not offensive to the senses of sight and smell; that the carcass of said horse, except that a permit to remove it was not obtained, was removed by the defendant in all respects as required by the said police regulation.

This being all the evidence in the case, thereupon counsel for the defendant requested the court to rule as matter of law that the refusal of the Commissioners of the District of Columbia to issue a permit for the removal of the dead animal mentioned in the information in this case was arbitrary and illegal and against the principles of personal liberty and the rights of private property; but the court refused to so rule; to which refusal and ruling the defendant, by his counsel, then and there duly excepted.

And thereupon counsel for the defendant requested the court, on the agreed facts of this case, to rule as matter of

law that section 22, article VIII, of the police regulations of the District of Columbia, as construed by the Commissioners, is unconstitutional and void, as authorizing the taking of private property without compensation, and as depriving the defendant's employer of his property without due process of law; but the court refused to so rule; to which refusal and ruling the defendant, by his counsel, then and there duly excepted.

And thereupon counsel for the defendant requested the court on the agreed facts of this case, to rule as matter of law that the provision in the contract between the Washington Fertilizer Company and the District of Columbia (for the removal of garbage in the city of Washington and its more densely populated suburbs, for a period of five years from December 1, 1900) giving to said company the right to remove and convert to its own use all dead animals in the District of Columbia, to the exclusion of their owner's rights thereto is unconstitutional and void, as authorizing the taking of private property without compensation and without due process of law; but the court refused to so rule, to which refusal and ruling the defendant, by his counsel, then and there duly excepted.

And thereupon counsel for the defendant requested the court, on the agreed facts in this case, to rule that the effect of the action of the Commissioners in refusing to issue a permit for the removal of the dead animal in question was to prohibit and not to regulate the applicant's business, and that said regulation, as construed by said Commissioners, is unreasonable and void as an unwarranted interference with the rights of private property; but the court refused to so rule; to which refusal and ruling the defendant, by his counsel, then and there duly excepted.

And thereupon counsel for the defendant requested the court, on the agreed facts of this case, to rule that the police regulation in question is unreasonable and void and to discharge the defendant; but the court refused to so rule; to which refusal and ruling the defendant, by his counsel, then and there duly excepted.

*Mr. Sidney T. Thomas* for the plaintiff in error.

*Mr. Andrew B. Duvall* and *Mr. Clarence A. Brandenburg* for the defendant in error:

1. The police regulation in question was made, not only under the authority of the joint resolution of Congress approved February 26, 1892 (27 Stat. 394), but also under the express authority contained in the appropriation act approved June 6, 1900. The regulation is not invalid because it anticipates a possible public danger. It is not arbitrary; it represents the deliberate judgment of the public authorities respecting the subject-matter. Such a regulation was necessary to carry into effect the provisions of the act of Congress respecting the collection and disposal of garbage and dead animals. *Mugler* v. *State of Kansas,* 123 U. S. 623; *Railroad Co.* v. *District of Columbia,* 10 App. D. C. 126; *State* v. *Orr,* 68 Conn. 101; Tiedeman on Mun. Corp. and cases cited, Par. 120.

2. The regulation is no more subject to the criticism that private property is taken for public use without compensation, than any other regulation made in the exercise of the police power; whereby, for public purposes, the use of property is regulated. Nor does the fact that in the case at bar the dead animal had not, at the time of its removal, become a nuisance, offensive to the health or senses, make any difference. The regulation is justified upon the ground that there was a reasonable contingency that such a regulation was necessary for the protection of the public. *Blydenburg* v. *Miles,* 39 Conn. 484.

3. The constitutionality of ordinances similar to the police regulation in question has been upheld in the following cases: *Alpers* v. *San Francisco,* 32 Fed. Rep. 503; *Smiley* v. *McDonald,* 42 Nebr. 5; *Walker* v. *Jameson,* 140 Ind. 591; *River Rend. Co.* v. *Behr,* 7 Mo. App. 345; *State* v. *Fisher,* 52 Mo. 177; *Grand Rapids* v. *De Vries,* 123 Mich. 570; *Boehm* v. *Mayor, etc.,* 61 Md. 259; *In re Vandine,* 6 Pick. 187; *Louisville* v. *Wible,* 84 Ky. 290; *Ouray* v. *Carson,* 59 Pac.

Rep. 876; *Deems* v. *City*, 80 Md. 173; *Board of Police Comrs.* v. *Wagner* (Md.), 48 Atl. Rep. 455.

Mr. Justice SHEPARD delivered the opinion of the Court:

There can be no more important field for the exercise of the activity of the ordinary police powers of government than the preservation of the public health, and it is within the unquestioned power of the municipal authorities to enact regulations looking to the speedy and innocuous removal of the carcasses of all animals that may die within the limits of their jurisdiction, the decomposition of which would not only endanger the public health, but also create a serious nuisance of another kind.

At the same time it is equally clear that the power is not an unlimited one, and that every exercise of it, on behalf of the public health or any other legitimate public purpose, must, in order to justify an infringement of the rights of person or property, have a substantial relation to those objects. *Mugler* v. *Kansas*, 123 U. S. 623, 661; *Lawton* v. *Steele*, 152 U. S. 133, 136; *Moses* v. *United States*, 16 App. D. C. 428, 438.

Applying those principles to the facts disclosed by the record, the question for determination is, whether the regulations as made and interpreted by the Commissioners, and their refusal to permit the owner of the dead animal to arrange for its removal with the precautions specified in said regulations, were within, or in excess of, the powers which they could lawfully exercise?

The original regulation, it will be observed, merely provides for the manner in which certain dead animals shall be transported through the streets, alleys and public places of the city, and conveyed either out of the District, or to such place therein, as shall be designated by the health officer for disposition in ways not injurious to the public health.

Thereafter the Commissioners contracted with certain parties, for five years, to remove all garbage and dead animals from the city limits; and then, with the intention, as recited

in the agreed statement, to prevent any one but said contractor from removing dead animals, they enacted an additional regulation prohibiting such removals without a special permit issued by them.

The regulations, on their face, seem unobjectionable, and the question turns upon the conduct of the Commissioners in refusing the permit, and the action of the owner and his agents in proceeding to remove the animal notwithstanding the refusal of the permit, which is the immediate foundation of the conviction that is sought to be reversed.

As the agreed statement shows, the animal had recently died, the carcass had not become injurious to health or offensive to the senses of sight or smell, it was valuable to the owner, who sold it for one dollar, and was worth to the purchaser eight dollars, and the transportation through the streets and from the District was offered to be made, in demanding the permit, and actually made after its refusal, in strict accordance with the specifications of the regulations.

These admitted facts, and the further admission of the intent with which the regulation respecting permits had been enacted, show that it was enacted, not to confer a discretion to be exercised upon a consideration of the circumstances of each application that might be made for a permit, but an arbitrary power to refuse consent. The admission of this intent was made in order to present the question in a clear-cut form for adjudication, and there is no doubt that the regulation, whilst intended to operate as aforesaid, was founded in an honest conception of what the conservation of the public interests demanded.

However, the actual conditions disclosed make as complete a case for judicial inquiry and determination, as if the exclusion of all such removals, by owners and others under their authority, had been expressly declared. *Yick Wo* v. *Hopkins,* 118 U. S. 356, 366, 374.

After much consideration, and with due regard to the public interests involved, our conclusion is, that the owner's right of property did not cease with the death of the animal,

which did not at once become a nuisance, and that he had the right to dispose of the carcass and procure its removal from the city and District limits before it could become offensive or dangerous to the public health, in a manner fulfilling the requirements for transportation along the streets and other public places of the city and District.

This conclusion is supported by the decided weight of authority. *Underwood* v. *Green*, 42 N. Y. 140; *River Rendering Co.* v. *Behr*, 77 Mo. 91; *State* v. *Morris*, 47 La. Ann. 1660; *Schoen Bros.* v. *Atlanta*, 97 Ga. 697; *Knauer* v. *Louisville*, 41 L. R. A. 219 (Ky. 1900); *Greensboro* v. *Ehrenreich*, 80 Ala. 579; *Vontresse* v. *McGee*, 60 N. E. Rep. 318 (Ind. 1901); *Alpers* v. *Brown*, 60 Cal. 447.

In *Underwood* v. *Green*, *supra*, which is the leading case involving the question, the owner of certain hogs that had been suffocated in a car, brought an action against the city contractor who took them away under the authority of an ordinance directing all dead animals to be forthwith removed from the city limits.

In the course of the well-reasoned opinion of Judge Earl it was said in language directly applicable to this case, that:

" There was no evidence that the hogs were offensive or dangerous in any way to public health, or that the owner had abandoned them, or was unwilling to take proper care of them. The plaintiff's agent was not requested to take care of them, and they were taken away before he had an opportunity to take care of or remove them. * * * Upon such a state of facts I am of opinion that the defendant cannot justify under the city ordinance above mentioned. A dead hog is not *per se* a nuisance, even though it died of suffocation, and is not necessarily dangerous to public health. The owner may still put it to a useful and innocent purpose."

In *Rendering Co.* v. *Behr*, *supra*, the Supreme Court of Missouri, in an analogous case, wherein it reversed the Missouri Court of Appeals (7 Mo. App. 345), said:

" The death of a domestic animal does not terminate the owner's property, and while he may be required to make such use or disposition of the carcass as will prevent a nuisance,

stench or other inconvenience to the neighborhood, the municipal authorities cannot arbitrarily deprive him of his property by giving it to another. If not *per se* a nuisance, it is property in the broadest sense of the term, and all the provisions of our constitution above quoted apply to it."

In this we fully concur. *State* v. *Morris, supra,* is a case on all fours with the one at bar, and the other cases cited assert the same governing principle.

The owner of an animal dying within the city limits, is entitled to a reasonable opportunity to exercise his unextinguished right of property in the carcass, and a police regulation that denies it to him is without foundation.

Under conditions that may prevail or dangers that may be apprehended, the time allowed may be very brief, but some reasonable time, under all the circumstances, must be accorded.

Whatever the owner may do in person he may, of course, do through the agency of others.

To say that he may remove the carcass, himself, in a proper manner, or sell it, but that his vendee shall not have the same right to remove, is still to deprive him of his right of property.

Dominion over property includes the right to dispose of it freely, and the denial of the right of the vendee to make lawful use of the property after its sale, indirectly affects and deprives the vendor of his right. Moreover, as long as the article retains its character of lawful property, the right of the vendee can be no less than that of his vendor.

Most, if not all, of the cases cited on behalf of the defendant in error, arise out of regulations and exclusive contracts for the disposition of garbage, and present conditions that do not appear in the case at bar. It may well be that, from the nature of garbage, a different rule would apply; but that phase of the question is not involved and we express no opinion upon it.

We are of the opinion that the refusal of the permit applied for by the purchaser of the animal was without justification, and that the owner could not be deprived of his right

to remove his property in a proper manner. The conviction of the plaintiff in error who acted as the employee of the owner in the matter of the removal, was, therefore, erroneous.

The judgment will be reversed and the cause remanded with direction to discharge the plaintiff in error.

*Reversed.*