JAMES WHELAN, APPELLEE, V. CHARLES DANIELS, APPELLEE; CITY GARBAGE COMPANY, APPELLANT.

FILED NOVEMBER 12, 1913. No. 17,345.

1. **Municipal Corporations:** ORDINANCES: VALIDITY: DEAD ANIMALS. The city of Omaha by an ordinance, in effect, declared that the carcasses of all dead animals found within the city, which were not slain for food, should at once become the property of the public contractor, whose name was contained in the ordinance; such ordinance is void, so far as it attempts to take private property without due process of law.

2. ———: ———: DISPOSITION OF DEAD ANIMALS. The owner should be permitted to remove such animals or to cause the same to be removed within a reasonable time fixed by such municipality, and be allowed to receive the value thereof, or to put the same to a beneficial use.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*Will H. Thompson,* for appellant.

*I. J. Dunn* and *J. J. O'Connor, contra.*

*John A. Rine, W. C. Lambert* and *Clinton Brome, amici curiæ.*

HAMER, J.

The defendant, the City Garbage Company, appeals from a judgment for costs in the district court for Douglas county. In that court there was a finding in favor of the plaintiff to the effect that at the commencement of the suit the plaintiff was entitled to an injunction against the defendants as prayed for in the petition; but, the contract upon which the suit was brought having expired, the injunction was denied for that reason only. Judgment was entered against the defendant, the City Garbage Company, for costs.

The plaintiff alleged that he was a citizen and resident

of the city of Omaha, and that on the 10th day of March, 1908, he entered into an ordinance contract with said city to remove and make use of all dead animals, not slain for human food, necessary to be removed during the period of three years on and after May 4, 1907; that under the contract the plaintiff was to remove *all dead animals wherever found in the city of Omaha,* whether on the streets, alleys or public grounds of the city, or on any private premises within the city, free of charge to the city, and free of charge to the residents thereof, said animals to be removed at once when notified by any one, and that a failure to remove any such dead animals, when so notified by the health office, within 12 hours after such notice, would subject the plaintiff to forfeit to the city $5, and $5 additional for a failure so to do for every 12 hours thereafter; that it was further agreed that the carcass of any dead animals so removed should not be allowed to be exposed to the air, or decay on any lot within a radius of three miles of the city limits, and that such dead animals should be disposed of in such manner that there would be no danger of producing a nuisance or unsanitary condition; that the plaintiff supplied himself with wagons and teams and all necessary equipment to do the work, and arranged to dispose of all dead animals so hauled as required by the terms of the contract, and that he incurred great expense in getting ready to carry out the terms of such contract; that the city of Omaha contains about 125,000 inhabitants and covers a large territory, and from day to day large numbers of dead horses, cows, cats, dogs, etc., are to be found upon the streets and on private premises within the city; that the prompt and efficient removal of the same from the city is absolutely necessary to the health and comfort of the inhabitants; that, unless the plaintiff is protected from the interference of the defendants and their associates, he cannot make an income *sufficient from said business for the same to become profitable,* and that he will suffer great loss and financial injury; that the plaintiff's right to remove *all such dead animals is exclusive;* that

said contract is for the benefit of the public; that the defendants and their servants, ever since the execution of such contract between the city of Omaha and the plaintiff, continuously interfere with the business of the plaintiff, and remove said animals and appropriate them to their own use, and deprive the *plaintiff of property in the same;* that said defendants are doing said work contrary to the provisions of the said ordinance of the city of Omaha; that they claim that plaintiff's contract with the city is invalid, and that the ordinance relating to the removal of dead animals is invalid; that the plaintiff is greatly damaged thereby; that the ordinance provides that no person who *has not a contract so to do* shall haul dead animals within the city of Omaha; that said ordinance is not enforced; that the police judge of said city has decided that the ordinance is void, and declines to permit prosecutions against persons engaged in violating the said ordinance. The prayer is that the defendants, their servants, and agents may be enjoined during the life of the plaintiff's contract from carrying on said business on said premises within the limits of the city of Omaha, and from hauling or removing or disposing of dead animals within said city, or in any way interfering with the plaintiff in the discharge and execution of his said contract.

The agreement entered into was by an ordinance whereby the plaintiff for a term of three years received from the city of Omaha the sole and exclusive right to haul and remove all dead animals (not slain for human food) wherever found in said city.

The City Garbage Company answered that it was engaged in the removal and disposal of the carcasses of dead animals since the 10th of May, 1908, and for some time prior thereto, and that the said carcasses were the property of the defendant, the City Garbarge Company; that the carcasses were removed within 10 to 20 hours from the death of the animals and before they became a nuisance or detrimental to public health, and that they were removed in a sanitary way; that, if the defendant had

failed to remove the carcasses, the same would in many instances have become a nuisance and a menace to the public health because of the fact that no one else would have removed the same; that said carcasses have been allowed to remain for a much longer period than 12 hours before being removed, sometimes remaining on the premises where they died as long as two or three days.

It is seemingly claimed by the plaintiff that he should recover a judgment and be held to be entitled to the ownership of all the dead animals that die in the city, and to have the right to remove the same in order to be able to maintain himself in the business of hauling dead animals for the city. Inferentially this is a contention that the property of one man may be taken for the benefit of another, that is, that the fat dead horse or cow of one man may be taken by the contractor so as to enable him to remove the lean, mangy, dead horse of another man, and the lean, hidebound, tallowless cow of still another, as also dead cats and dead dogs having no value. It would seem to be contended that the business of the plaintiff as a contractor with the city may not be carried on because of the danger of his financial failure and the failure of the business, unless he is given the *exclusive* right to take *all* the dead animals which die in the city and to become the owner of the same. If A should lose by death a fat, well-conditioned Galloway or Polled-Angus cow, her hide when removed might have a value of $10 to $20, possibly more. The body of the animal alone might be worth nearly or quite as much. The theory of the plaintiff is that under the ordinance he should be held to have A's cow, including the valuable robe which might be made from her hide, and without any compensation to A, and so as to enable him to remove B's dead cow that is lean, hidebound, tallowless; and of little or no value. It must be conceded that, if the owner of the dead animal does not remove the body within a reasonable time, the safety of the public being endangered by the presence of the same, the city has a right to direct that the body shall

be removed; but to take the property of A so as to enable the plaintiff to haul away the dead bodies of animals belonging to B, C and D, without expense to them or to the city, is not due process of law as to A, and is in no sense justifiable. The following cases support our views: *Knauer v. City of Louisville,* 20 Ky. Law Rep. 193, 41 L. R. A. 219; *State v. Morris,* 47 La. Ann. 1660; *Yates v. Milwaukee,* 10 Wall. (U. S.) 497; *Underwood v. Green,* 42 N. Y. 140; *Schoen Bros. v. City of Atlanta,* 97 Ga. 697; *Campbell v. District of Columbia,* 19 App. D. C. 131; *River Rendering Co. v. Behr,* 77 Mo. 91; *City of Richmond v. Caruthers,* 103 Va. 775; Freund, Police Power, sec. 522; *Iler v. Ross,* 64 Neb. 710.

An examination of the authorities cited shows, as it was specifically held in *Knauer v. City of Louisville, supra,* that the municipality cannot, under the claim that the carcass of the dead animal is a menace to the public health, authorize its contractor to take possession of it and to convert it to his own use, and, if he does so, it is confiscation. It was held in the same case that the owner's rights did not cease at the death of the animal, but that the municipality might prescribe a time in which the owners should be permitted to remove the dead carcasses or cause them to be removed. In *State v. Morris, supra,* it was said: "If the property is not a nuisance, the owner should not be prevented from obtaining its value and should not be denied the right to make any disposition of it (however innocent and useful)." The court also said: "It is not possible, under police regulation, to take property from one man and give it to another. The city might, as a sanitary measure, after having given the owner an opportunity to dispose of his dead animals, authorize a contractor to cart them away and appropriate them to his own use." In *Yates v. Milwaukee, supra,* it was held that it could never be necessary to take from one man his property and give it to another until the property was in such condition that it was about to become a nuisance, and that an opportunity should be given the

owner to make such disposition of his property as would prevent the apprehended danger. In *Underwood v. Green, supra,* it was held that a dead hog was not *per se* a nuisance; that it was not necessarily dangerous to the public health; and that the owner might put it to a useful and innocent purpose, and that the municipal authorities would not arbitrarily deprive him of his property by giving it to another. In *Schoen Bros. v. City of Atlanta, supra,* it was held: "That where an animal dies or is found dead within the corporate limits, it shall not be allowed to remain there beyond a specified reasonable time, and that the owner shall within that time remove it or cause it to be removed beyond such limits, and to a specified reasonable distance, and that, unless he does so, the carcass shall be taken charge of by the agent of the corporation and dealt with as a nuisance *per se.*" But in that case the particular ordinance under which Schoen Brothers were tried was declared unconstitutional and void. In *Campbell v. District of Columbia, supra,* it was held that the refusal by the municipal authorities of a permit to remove the carcass in a manner conformable to the police regulations governing the transportation of dead animals through the city was unjustifiable and an attempt to deprive the owner of his right of property in the carcass. In *River Rendering Co. v. Behr, supra,* it was held: "A city ordinance is void which undertakes to confer upon one person the right to remove and convert to his own use the carcasses of all dead animals, not slain for food, found within the limits of the city, to the exclusion of the right of the owners of the same to remove and use them before they became a nuisance." In *City of Richmond v. Caruthers, supra,* it was held that an ordinance like the one in question was in conflict with the fourteenth amendment to the constitution of the United States forbidding that any person shall be deprived of his property without due process of law.

It is clearly within the police power of the state by ordinance of its towns and cities, and within the limits

prescribed by the legislature, under the constitution, to protect the public health. In the exercise of such power and acting in good faith, a city may provide for the removal of dead animals if the owner neglects to do so within a reasonable time to be prescribed by the ordinance, and its right to do so may not be seriously questioned. The owner of a dead animal, when it dies upon the owner's premises, may have a reasonable time to remove the same, such time to be prescribed by the ordinance. The owner has a property interest in the dead animal which he should be allowed to protect, and if the ordinance fails to give such opportunity it is in that respect unconstitutional because it takes private property without due process of law.

The city authorities may, without doubt, under the police power, regulate and control the removal of dead animals, and, to that end, may provide for and appoint a suitable person, under proper restrictions and regulations, to manage and control such removal, and make it his exclusive duty so to do. *Smiley v. MacDonald*, 42 Neb. 5. *Iler v. Ross*, 64 Neb. 710, must not be construed to overrule the former case. The officers of the city must be allowed a large discretion in determining when and how such garbage must be disposed of, but the rights of property in the individual must not be unnecessarily violated. The defendant, the City Garbage Company, a corporation organized for that purpose, assumed the right to engage in a general garbage removal business in the city of Omaha, and there is no doubt of the authority of the city, in the exercise of the police power, to prevent the defendant from interfering with the city's duly authorized official in the discharge of his duty. The plaintiff's right to an injunction to protect his property interest in the garbage to be removed is not so clear, but it is not necessary to further investigate that question in this case, since his contract had expired before the trial of the case in the district court, and that court was not clearly wrong in refusing him an injunction for that reason.

The writer does not think that the plaintiff, at the time he commenced his action, was entitled to any relief as against the defendant, the City Garbage Company. But the majority think that he was. In such case the apportionment of costs is within the sound discretion of a court of equity, and it does not appear that there was an abuse of discretion in that regard by the trial court.

The decree of the district court is

AFFIRMED.

ROSE, J., dissents.